IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

NEW HAMPSHIRE INSURANCE COMPANY)

      Plaintiff,

v.

GAYLE HILL, et al.

      Defendants.

Civil Action No.:
11-414

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the plaintiff in the above-styled cause, New Hampshire Insurance Company, by and through its undersigned counsel of record and files this Complaint for Declaratory Judgment.

### PARTIES

1.  New Hampshire Insurance Company ("NHIC") was incorporated in New Hampshire, is domiciled in Pennsylvania, and its principal place of business is in the state of New York.  NHIC is neither a citizen nor resident of Alabama.

2.  Upon information and belief, defendant Gayle Hill is an adult resident of the state of Florida.  At all relevant times, Gayle Hill was an officer and/or employee of Leisure Tyme RV, Inc. ("Leisure Tyme").

3.  Upon information and belief, defendant Brian Hannon is an adult resident of the state of Florida.  At all relevant times, Brian Hannon was an employee of Leisure Tyme.

4.     Upon information and belief, defendant Terry Drake is an adult resident of the state of Alabama.  At all relevant times, Terry Drake was an employee of Leisure Tyme.

5.     Upon information and belief, defendant John A. Pankratz is an adult resident of the state of Florida.

6.     Upon information and belief, defendant Donald McBrier is an adult resident of the state of Florida.

7.     Upon information and belief, defendant Dorothy McBrier is an adult resident of the state of Florida.

8.     Upon information and belief, defendant James L. Heitman is an adult resident of the state of North Carolina.

9.     Upon information and belief, defendant Charles A. Cortese is an adult resident of the state of Illinois.

10.     Upon information and belief, defendant Eva N. Cortese is an adult resident of the state of Illinois.

11.     Upon information and belief, defendant Rodney I. Cammauf is an adult resident of the state of Florida.

12.     Upon information and belief, defendant Garwood Wolfe is an adult resident of the state of South Dakota.

13.     Upon information and belief, defendant Janet Wolfe is an adult resident of the state of South Dakota.

14.    Upon information and belief, defendant James McNally is an adult resident of the state of Florida.

## JURISDICTION

15.    This action is brought pursuant to the 28 U.S.C. §§ 2201 and 2202 to determine the rights and duties of the parties.   Jurisdiction of this cause is proper under 28 U.S.C. § 1332.

16.    The amount in controversy exceeds $75,000.00.[1]    This Declaratory Judgment action arises out of claims against Defendants Gayle Hill, Brian Hannon and Terry Drake by Defendants John A. Pankratz, Donald R. and Jane M. McBrier, James L. Heitman, Anthony and Eva. N. Cortese, Rodney I. Cammauf, Garwood C. and Janet R. Wolfe, and James H. McNally ("the Purchaser Defendants").

## FACTS

17.    The Purchaser Defendants were owners of recreational vehicles ("RVs") who entered into transactions with Leisure Tyme to purchase new RVs.   Each of the Purchaser Defendants traded-in a used RV towards the purchase price of a new RV.

18.    The Purchaser Defendants, with the exception of John A. Pankratz, purchased their new RVs from Leisure Tyme's Summerdale, Alabama facility.   John A. Pankratz purchased his RV from Leisure Tyme's Mary Esther, Florida facility.   Each of these transactions took place between June 2008 and January 2009.

---

[1] As evidenced by the April 26, 2011 letter from counsel for the Purchaser Defendants, attached hereto as Exhibit 1, the Purchaser Defendants seek in excess of $300,000 to resolve their claims.

19.     According to the Purchaser Defendants, Leisure Tyme agreed, as a condition of each Purchaser Defendants' purchase of a new RV, to pay the remaining loan balance owed by them on their trade-ins.  The Purchaser Defendants allege they each executed the paperwork necessary to allow the insured to pay off the loans on their behalf.  The Purchaser Defendants further allege Leisure Tyme failed to pay off their loans on the traded-in RVs.

20.     On March 13, 2009, Leisure Tyme filed for bankruptcy.  The Purchaser Defendants sought and were granted relief from the bankruptcy stay to collect on their claims to the extent of any bond or insurance coverage available.[2]

21.     All of the Purchaser Defendants filed suits against Leisure Tyme[3] seeking damages from Leisure Tyme's alleged failure to retire the Purchaser Defendants' loans on their traded-in RVs.  The claims made against Leisure Tyme are solely to determine the value of the claims so that the Purchaser Defendants can collect from any bond or insurance coverage available to Leisure Tyme.  The Purchaser Defendants' claims were compelled to arbitration, and all of the lawsuits are now in arbitration in Mobile County Alabama.

## THE POLICY

22.     Insurance policy number 01-LX-009349860-0/001 was issued by NHIC to Leisure Tyme ("the Policy").  The Policy was originally issued for the period from June

---

[2] The Order Granting Motion By Dan And Dorothy McBrier, et al. For Relief From Stay is attached hereto as Exhibit 2.

[3] Some of the suits also name Defendants Gayle Hill, Brian Hannon and Terry Drake as defendants in their capacities as employees of Leisure Tyme.

1, 2008 through June 1, 2009; however, it was cancelled effective March 13, 2009.  The

Policy was delivered to Leisure Tyme at its address in Mary Esther, Florida.

23.     In pertinent part, the Policy contains the following provisions:

## GARAGE COVERAGE FORM

## SECTION I – COVERED AUTOS

***

## A.  Description Of Covered Auto Designation Symbols

21.     Any "Auto"

***

## SECTION II – LIABILITY COVERAGE

## A.  Coverage

### 1. "Garage Operations" – Other Than Covered "Autos"

a.     We will pay all sums an "insured" legally must pay as damages
because of "bodily injury" or "property damage" to which this
insurance applies caused by an "accident" and resulting from
"garage operations" other than the ownership, maintenance or use of
"covered autos". …

***

### 2. "Garage Operations" – Covered "Autos"

We will pay all sums an "insured" legally must pay as damages
because of "bodily injury" or "property damage" to which this
insurance applies, caused by an "accident" and resulting from
"garage operations" involving the ownership, maintenance or use
of covered "autos."

***

## B.  Exclusions

{W0297216.1 }

This insurance does not apply to any of the following:

### 1. Expected Or Intended Injury

"Bodily Injury" or "property damage" expected or intended from the standpoint of the "insured." But for "garage operations" other than covered "autos" this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### 2. Contractual

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

**a.**    Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.**    That the "insured" would have in the absence of the contract or agreement.

*\*\*\**

### 6. Care, Custody or Control

"Property damage" to or "covered pollution cost or expense" involving:

**a.**    Property owned, rented or occupied by the "insured";

**b.**    Property loaned to the "insured"

**c.**    Property held for sale or being transported by the "insured"; or

**d.**    Property in the "insured's" care, custody or control.

But this exclusion does not apply to liability assumed under a sidetrack agreement.

\*\*\*

### 14. Loss of Use

Loss of use of other property not physically damaged if caused by:

**a.** A delay or failure by you or anyone acting on your behalf to perform a contact or agreement in accordance with its terms.

\*\*\*

## C.  LIMIT OF INSURANCE

\*\*\*

All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident."

\*\*\*

## SECTION V – GARAGE CONDITIONS

\*\*\*

### 8.  Two Or More Coverage Forms Or Policies Issued By Us

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident," the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy.  This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

\*\*\*

## SECTION VI – DEFINITIONS

**A.**  "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury: or "property damage."

\*\*\*

**C.**  "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

\*\*\*

**H.**  "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations.  "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in Section I of this Coverage Form as covered "autos."  "Garage operations" also include all operations necessary or incidental to a garage business.

\*\*\*

**J.**  "Insured contract" means

    **1.**    A lease of premises;

    **2.**    A sidetrack agreement;

    **3.**    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **4.**    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **5.**    That part of any other contract or agreement pertaining to your garage business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

8

    **6.**    An elevator maintenance agreement; or

    **7.**    That part of any contract or agreement entered into, as part of your garage business, pertaining to the rental or lease, by you or any of your "employees," of any "auto." However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay "property damage" to any "auto" rented or leased by you or any of your "employees." . . .

***

**L.** "Loss" means direct and accidental loss or damage. But for Garagekeepers Coverage only, "loss" also includes any resulting loss of use.

***

**O.** "Property damage" means damage to or loss of use of tangible property.

***

## SECTION XIII – TRUTH IN LENDING ERRORS AND OMISSIONS FOR THE PURCHASE OR LEASE OF AN AUTOMOBILE

Liability Coverage is changed by adding the following:

A.    We will also pay all sums the "insured" must legally pay as damages because of the unintentional violation of any Federal or State Consumer Credit Act including but not limited to the Truth in Lending Act, or other similar statute, law or ordinance, committed or allegedly committed by the "insured" during the policy period and which arises out of representations made pertaining to the lending of amounts for the purpose of purchasing or leasing any automobile.

    1.    We have the right and the duty to defend any "suit" asking for these damages. However, we have no duty to defend "suits" for errors and omissions not covered by this additional coverage.

    2.    We may investigate and settle any claim or "suit" as we consider appropriate.

    3.    Our payment of the limit in **C.** below ends our duty to defend or settle.

4.   In the event of a claim or "suit", a deductible of $1000, unless otherwise shown in the Declarations, shall be deducted from the total amount, including "expenses" resulting from each claim or "suit" and we shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to each claim.

**EXCLUSIONS**

This insurance does not apply to:

1.   Any willful or knowing violation of any Federal or State Consumer Credit Act, Truth in Lending Act or any similar statute, law or ordinance committed by you or at your direction.

2.   Damages if caused by any willful, dishonest, fraudulent, intentional or criminal act committed by the "insured," nor does it apply to any civil fines or penalties levied by any governmental agency against the "insured."

**C.   LIMIT OF INSURANCE**

Regardless of the number of "insureds", claims made, "suits" brought or transactions involved, the most we will pay for all damages under this coverage is a total of $300,000 during each annual policy term.

\*\*\*

<u>COUNT ONE – DECLARATORY RELIEF</u>

24.   NHIC adopts and incorporates by reference the preceding paragraphs of this Complaint.

25.   A dispute exists between NHIC and the Defendants with regard to whether there is coverage under the Policy for the claims and damages alleged by the Purchaser Defendants.

26.   Among others, the following justiciable issues exist concerning whether there is coverage for the claims of the Purchaser Defendants under the Policy:

(a)   Do the Purchaser Defendants' alleged damages result from " garage operations" as defined by the Policy?

(b)   Were the Purchaser Defendants' alleged damages caused by an "accident" as defined by the Policy?

(c)   Do the Purchaser Defendants' alleged damages constitute "bodily injury", "property damage" and/or "personal and advertising injury" as defined by the Policy?

(d)   Does the Expected Or Intended Injury exclusion operate to exclude coverage for the Purchaser Defendants' claims?

(e)   Does the Contractual exclusion operate to exclude coverage for the Purchaser Defendants' claims?

(f)   Does the Care, Custody Or Control exclusion operate to exclude coverage for the Purchaser Defendants' claims?

(g)   Does the Loss Of Use exclusion operate to exclude coverage for the Purchaser Defendants' claims?

(h)   Are the Purchaser Defendants' alleged covered under the Truth In Lending Errors And Omissions For The Purchase Or Lease Of An Automobile section of the Policy?

27.   NHIC requests the Court to declare that it has no duty to defend or indemnify any of the Defendants in the lawsuits and arbitrations for the claims alleged by the Purchaser Defendants.

**WHEREFORE, PREMISES CONSIDERED**, NHIC requests that:

A.   This Court take jurisdiction of this cause;

B.   This Court order, adjudge and decree that this is a proper cause for an action of declaratory judgment and that there is a bona fide controversy between the parties as to their legal rights, duties, and liabilities;

C.     The process of this Court be issued to the defendants as provided by law and the rules of this Court and that the defendant be required to plead or answer to this Complaint for Declaratory Judgment within the time required by law;

D.     Upon a final hearing of this cause, this Court will declare the rights, duties, status and legal relations of NHIC and the defendants under the aforementioned policy of insurance;

E.     NHIC prays for such other, further and different relief to which it may be entitled and offers to do equity and further requests, if it be mistaken and any special relief herein sought is denied, such other, further or more general relief to which it may be entitled be granted.

/s/ John W. Dodson
John W. Dodson                    (DOD012)
Michelle L. Crunk                 (CRU017)
*Attorneys for New Hampshire Insurance Company*

OF COUNSEL:
FERGUSON, FROST & DODSON, LLP
Post Office Box 430189
Birmingham, Alabama  35243-0189
(205) 879-8722 phone
(205) 879-8831 fax
jwd@ffdlaw.com
mlc@ffdlaw.com

# Underwood & Riemer, P.C.

Earl P. Underwood, Jr.
Kenneth J. Riemer
James D. Patterson

April 26th 2011

Mr. James H. Pike
Shealy, Crum & Pike, P.C.
P.O. Box 6346
Dothan, AL 36302-6346

Re:    Leisure Tyme Cases Coverage Issues

Dear Jim:

This follows discussions you and Joey have had with James Patterson and myself regarding possible settlement of our cases against Leisure Tyme. Your position regarding settlement in all of these cases seems to be based, not upon some defense to liability but, on a limitation of insurance coverage to $300,000. The reality is that there is no way possible to resolve all of these cases for a total payment of $300,000. Moreover, from our review of Leisure Tyme's garage policy it seems clear that there is no such limitation that would apply to our clients' claims. Therefore, the entire $3,000,000 "Other than Auto Aggregate" coverage amount should be available for payment of settlements or judgments in these cases. We also believe that there may be available coverage under Mrs. Hill's umbrella policy. In short, if we are to advance settlement discussions in this case, then we must get beyond the notion that funds available to settle the cases are limited to $300,000. If we cannot do that, then we will have to have the coverage issue adjudicated one way or another. In an attempt to avoid that, I am setting out in this letter our position regarding the main points concerning coverage.

## The Garage Policy

With regard to the coverage issues raised in the reservation of rights letter from the New Hampshire Insurance Company, I enclose a copy of the policy that I obtained with a subpoena before any of the suits were filed. Also I enclose copies of the complaints we have filed.

Under Alabama law, negligence resulting in damages has long been held to be an "accident" that triggers coverage. See *Moss v. Champion Ins. Co.*, 442 So. 2d 26, wherein the Alabama Supreme court said:

It is clear from our cases that the term "accident" in such a policy does not necessarily exclude human fault called negligence. *United States Fidelity and Guaranty Company of Alabama v. Bonitz Insulation Company of Alabama*, 424 So.2d 569, 571 (Ala.1982), citing *Employers Insurance Company of Alabama, Inc. v. Alabama Roofing & Siding Company*, 271 Ala. 394, 124 So.2d 261 (1960). (In the latter case the insured roofing contractor left a partially replaced roof

21 South Section Street
Fairhope, Alabama 36532
Voice: (251) 990-5558
Fax: (251) 990-0626

http://www.alalaw.com
E-mail address:
epunderwood@alalaw.com

EXHIBIT
1

Letter to Pike Re: Insurance Coverage
April 26th 2011
Page 2 of 3

overnight, with sufficient protection from rain; however, water leakage caused damage. Held: judgment for plaintiff contractor against insurer affirmed.) The decision in *Alabama Roofing, supra,* followed that in *Employers Insurance Company of Alabama v. Rives,* 264 Ala. 310, 87 So.2d 653 (1955), and involved the same policy language as that in the instant policy. We quote from *Alabama Roofing,* 271 Ala. at 396, 124 So.2d 261: "Rives entered into a contract with one Williams to install pumps at a filling station and to connect the pumps with underground tanks. In performing this work Rives' employees negligently failed to tighten a connecting nut. As a result of this negligence the well of one Davis became contaminated with gasoline. Davis brought suit against Rives to recover for the damage he had suffered as a result of the contamination of his well...."

*Moss v. Champion Ins. Co.,* at 28.

With regard to coverage for bodily injury, each of our complaints alleges mental anguish so there is coverage here. See *Am. Econ. Ins. Co. v. Fort Deposit Bank,* 890 F. Supp. 1011, 1017 (M.D. Ala. 1995) ("In construing the language of insurance contracts governed by Alabama law, tribunals have characterized mental anguish as 'bodily injury.' In *Morrison Assurance Company v. North American Reinsurance Corporation,* 588 F.Supp. 1324, 1327 (N.D.Ala.1984), the court, applying Alabama law, found that although mental anguish was not articulated specifically in the subject policy, the terms "sickness" or "disease" necessarily encompassed mental anguish.")

Each of the complaints also request compensatory damages which would include the loss of use of the trade-in vehicles. According to the policy "'Property damage' means damage to or loss of use of tangible property." Alabama courts have found that the loss of use of property constitutes property damage. "The circuit court cited *Fitness Equipment, Andalusia Ready Mix,* and *Truitt Oil, supra,* and concluded that the exclusions for damage to Dorsey's trailers did not exclude coverage for Wheelwright's claims based on the loss of use of its tractors. We agree." *Liberty Mut. Ins. Co. v. Wheelwright Trucking Co., Inc.,* 851 So. 2d 466, 496 (Ala. 2002).

Also, due the credit and reputation damage suffered by our clients as a proximate result of the failure to retire the existing loans, the "advertising damages" component of the policy is invoked.

The exclusion for intentional acts does not bar coverage. As you may recall, Mrs. Gayle has testified repeatedly that it was her intention to pay off all the trade-ins within thirty days after the transactions. Furthermore, all of the complaints allege fraud and suppression whether intentional or negligent. This claim is covered too. "Thus, suppression of a material fact is not necessarily an intentional tort, although if shown to have been committed intentionally it can come within an 'intentional acts' exclusion." *Townsend Ford, Inc. v. Auto-Owners Ins. Co.,* 656 So. 2d 360, 364 (Ala. 1995)See also *Am. States Ins. Co. v. Cooper,* 518 So. 2d 708, 710 (Ala. 1987) ("Plaintiffs in the underlying damage suits, however, have alleged that the misrepresentations upon which they relied were either intentionally *or* recklessly *or* innocently made. On the basis of those allegations, the Court finds that both American and Constitution are

21 South Section Street
Fairhope, Alabama 36533-0969
Voice: (251) 990-5558
Fax: (251) 990-0626

World Wide Web Address:
http://www.alalaw.com
E-mail address:
epunderwood@alalaw.com

Letter to Pike Re: Insurance Coverage
April 26th 2011
Page 3 of 3

obligated to defend Cooper and Lakeside Properties, and further to indemnify them except for intentional misrepresentations.") See also *Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598, 603 (11th Cir. 1993) ("We conclude that the district court correctly applied a subjective standard in interpreting the policy's coverage limitation. Alabama courts have consistently construed insurance provisions which limit coverage to injuries not "intended or expected" by the insured as precluding coverage only where the insured subjectively intended or expected its action to cause injury. *See White v. Maryland Cas. Co.*, 589 So.2d 1294, 1296 (Ala.1991); *Watson v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 465 So.2d 394, 396 (Ala.1985); *Dyer*, 454 So.2d at 925-26.").

The "contract" exclusion does not apply either because these claims do not involve any indemnity contract. Moreover, the duties breached in these cases exists independent from any contractual obligation and lay outside the contract exclusion as defined in the policy. See *United States Fid. & Guar. Co. v. Nat'l Tank & Mach. Works, Inc.*, 402 So. 2d 925, 927-28 (Ala. 1981) ("Those allegations do not depend upon any "liability assumed by the Insured under any contract" but upon an alleged breach of duty implied by law; hence that exclusion does not apply. United States F. & G. Co. v. Birmingham Oxygen Serv., Inc., 290 Ala. 149, 274 So.2d 615 (1973). See also American Casualty Co. v. Timmons, 352 F.2d 563 (6th Cir. 1965); Lumberman's Mutual Casualty Co. v. Town of Pound Ridge, 362 F.2d 430 (2nd Cir. 1966); and *928 J. L. Simmons Co., Inc. v. Fidelity and Casualty Co., 511 F.2d 87 (7th Cir. 1975)").

We do not believe any of the exclusions apply to these claims and certainly none mentioned in the reservation of rights letter.

Gail Hill's Allstate Umbrella Policy

Finally, I sent you an email some time back regarding the Allstate umbrella policy of Mrs. Gail Hill and inquiring whether or not there was coverage under that policy for any of the claims that our clients have made. I note that not all of them have named Ms. Hill as a defendant but several of them have. Please let me know something on this issue as soon as possible.

You have made it clear that you are not the coverage attorney and I appreciate that. However, since your settlement position is centered on coverage, we are at an impasse unless we can discuss these coverage issues with someone. If we are to advance these discussions we will need to have a dialogue with the decision-maker regarding these issues and trust you will forward this to that person as we have no way of knowing who that is.

Sincerely,

Earl P. Underwood, Jr.

21 South Section Street
Fairhope, Alabama 36533-0969
Voice: (251) 990-5558
Fax: (251) 990-0626

World Wide Web Address:
http://www.alalaw.com
E-mail address:
epunderwood@alalaw.com

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

IN RE:                              )

LEISURE TYME RV, INC.,              )        CASE NO. 09-30419-LMK
                                             CHAPTER 7
            Debtor.                 )

## ORDER GRANTING MOTION BY
## DAN AND DOROTHY MCBRIER et al., FOR  RELIEF FROM STAY

**THIS CASE** came before the Court upon a Motion for Relief from the Automatic

Stay filed by Earl P. Underwood, Jr., attorney for Dan and Dorothy McBrier, John

Pankratz, Anthony and Eva Cortese, Garwood C. and Janet Wolfe, Rodney Cammauf,

and James Heitman, (Doc. 32). The Court directed a response to the motion, but the

Debtor did not oppose the motion despite the opportunity to do so. It is therefore

**ORDERED AND ADJUDGED:**

1. The Motion for Relief from Stay is granted.

2. The automatic stay is modified to the extent necessary to determine the value

   of the claims of the above parties against Leisure Tyme TV, Inc. and to collect

   said claims out of any bond or insurance coverage that is available to pay

   them.

3. This order is entered for the sole purpose of allowing Movant to determine the

   value of their claims. This order does not authorize the Movant to seek or

   obtain a remedy against the debtor.

DONE AND ORDERED in the Northern District of Florida, on July 13, 2009.

Lewis M. Killian, Jr.
United State Bankruptcy Judge

**EXHIBIT**

**2**