IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

NEW HAMPSHIRE INSURANCE          )
COMPANY                          )
                                 )
    Plaintiff,              )
                                 )          Civil Action No.:
v.                               )          11-414
                                 )   **ORAL ARGUMENT REQUESTED**
GAYLE HILL, et al.               )
                                 )
    Defendants.             )

## REPLY TO PURCHASER DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff New Hampshire Insurance Company ("NHIC") and replies to the Purchaser Defendants' Opposition to Plaintiff's Motion for Summary Judgment as follows:

In order for there to be coverage under the NHIC Policy, the Purchaser Defendants agree their claims must allege an "accident" that causes either "bodily injury" or "property damage."[1]  In their Opposition, the Purchaser Defendants strain credibility and contradict case law in a failed attempt to fit the plain allegations of the underlying cases within the confines of those defined terms.  First, they contend Leisure Tyme and Ms. Hill's misappropriation of their funds was an "accident." It is clear, however, that putting

---

[1] Notably, the Purchaser Defendants do not dispute the facts set forth in Plaintiff's Motion for Summary Judgment. Neither do the Purchaser Defendants address Plaintiff's Motion for Summary Judgment arguments concerning coverage under the Garage Policy Extension Endorsement. The Purchaser Defendants' failure to respond to this argument operates as a concession to the fact there is no coverage available under the Garage Policy Extension Endorsement. *Hammonds v. Hyundai Motor Mfg. Alabama, LLC*, No. 2:10-cv-103-TFM, 2011 WL 2580168, *9 (M.D. Ala. June 28, 2011) (claims not addressed in opposition brief are deemed abandoned). Therefore, the only issue before the Court is whether coverage exists under the Garage Coverage Form.

money into an operating account and using it for operating expenses, rather than paying off customer loans, is not an accident. For this reason alone, there is no coverage for the claims under the Policy. The Purchaser Defendants further contend their alleged mental anguish damages qualify as "bodily injury" under Florida law and that they are alleging a claim for "property damage." Because both assertions cannot be sustained, there is also no coverage for this separate and independent reason. Lastly, the Purchaser Defendants contend the contractual liability exclusion does not apply, but that argument also fails. As set forth below, the Purchaser Defendants are wrong as to each point.

## I.     Leisure Tyme's misappropriation of funds does not constitute an "accident."

In stark contrast to the facts of the underlying cases, the Purchaser Defendants now contend Leisure Tyme and Ms. Hill's purposeful misappropriation of their funds was somehow accidental. The Purchaser Defendants cite a number of cases for the proposition that insurance policies covering liability for an "accident" apply to damage "inflicted by the insured on a third party where the insured does not intend to cause any harm to the third party." *Hartford Fire Ins. Co. v. Spreen*, 343 So. 2d 649 (Fla. Dist. Ct. 1977). Notably, the quote from *Spreen* in the Purchaser Defendants' brief ends with following tenet: "But never has coverage been found under such policies where the insured's act was deliberately designed to cause harm to the injured party." To argue that Leisure Tyme and Ms. Hill's misappropriation of the Purchaser Defendants' funds was not designed to cause harm is simply disingenuous.

As aptly described by the Purchaser Defendants in their brief, Leisure Tyme and Ms. Hill "accepted the money intended to be used to pay off the traded-in RV[s] and used

that money for its own benefit." Further, as the Purchaser Defendants note, an accident "is an unfortunate event resulting from carelessness, unawareness, ignorance or a combination of causes." *Sunshine Birds & Supplies, Inc. v. U.S. Fid. & Guar. Co.*, 696 So. 2d 907, 910 (Fla. Dist. Ct. App. 1997). Based on this definition, Leisure Tyme and Ms. Hill's conduct is anything but an accident.

The Purchaser Defendants cite to Ms. Hill's deposition to attempt to establish she always intended to pay off the Purchaser Defendants' loan balances. However, Ms. Hill's testimony that she intended to pay back the money she misappropriated does not answer the question of whether the misappropriation was accidental. It cannot be credibly argued the injuries suffered by the Purchaser Defendants were not expected or intended by Leisure Tyme and Ms. Hill when they chose to use the funds for their own benefit. Once that decision was made, the injury to the Purchaser Defendants was exacted.

> Q. What did you do with the funds that you did not pay off Bank of America on his loan, what did you do with the funds?
> A. They went into the Leisure Tyme operating account.
> Q. What were those funds used for?
> A. Operating.
> Q. Just describe for me operating.
> A. Everything, all overhead, payroll, floor plan interest, insurance, curtailments to the banks, mortgage payments, regular bills, everything.
> Q. Looking at prior to Mr. Pankratz when a purchase was made and financing was provided for a deal, would Leisure Tyme immediately issue a check on the trade-in?
> A. Immediately, no.
> Q. How long would that process normally take?
> A. Anywhere from a week to as much as a couple of months.
> Q. So sometimes a trade in would not be paid off right off the bat?
> A. Yes.

> Q.    Would a customer call and complain about that?
> A.    Occasionally.
> Q.    What would Leisure Tyme do to rectify that situation?
> A.    Pay it off.
> Q.    Would Leisure Tyme make payments on the trade in?
> A     We had been known to reimburse the customer or make a payment
>       on it, yes, to make sure the customer's credit didn't get affected.

(Exhibit 1, Gayle Hill Depo., p. 39, line 11 – p. 40, line 19).  There was no "carelessness, unawareness, ignorance or a combination of causes" of Leisure Tyme's conduct.  Rather, Leisure Tyme purposefully used the Purchaser Defendants' funds for its operational expenses instead of paying off the balances owed on the traded-in RVs.  After notification from the Purchaser Defendants that they were still being charged for their traded-in RVs, Leisure Tyme and Ms. Hill did not tell them their funds were being used for operating expenses, but instead said it was "having 'paperwork' problems or the "paperwork had been misfiled."  (Exhibit 2, Pankratz Answer and Counterclaim ¶15 and Cammauf Complaint ¶16).  Even if Ms. Hill's goal was ultimately to repay the money, it does not change the fact that Leisure Tyme and Ms. Hills's conduct was anything but accidental, and the injury suffered by the Purchaser Defendants was expected or intended.  *See Landis v. Allstate Ins. Co.*, 546 So. 2d 1051 (Fla. 1989) (holding logic dictates some form of harm inheres in and inevitably flows from the proscribed behavior.)  *See also Union Pump Co. v. Centrifugal Technology, Inc.*, No. 05-0287, 2009 WL 3015076, *3 (W.D. La. Sept. 18, 2009) ("Misappropriation requires an affirmative act and would not be a fortuitous act consistent with an accident to support an 'occurrence.'")

Furthermore, contrary to arguments made in their brief, the inclusion by the Purchaser Defendants of a negligence cause of action to their complaints does not create

coverage. *See Century Surety Co. v. Seductions, LLC*, 349 Fed. Appx. 455 (11th Cir. 2009). In *Century Surety*, the Eleventh Circuit affirmed the Southern District of Florida's entry of summary judgment in favor of an insurer in its declaratory judgment action. The insurer sought a declaration that its duty to indemnify the insured nightclub for injuries sustained by a patron allegedly beaten by nightclub employees was limited to a $25,000 sublimit for loss arising from assault and battery. The patron and his wife argued the sublimit did not apply because the patron's injuries arose from the nightclub's negligence rather than assault or battery. The court found this argument unpersuasive, "The [claimants'] artful pleading of claims sounding in negligence does not change the fact that [the patron's] injuries arose directly from an allegedly intentional attack." *Id.* at 458.

Likewise, in *HC Waterford Properties, LLC v. Mt. Hawley Ins. Co.*, No. 08-22158-CIV, 2009 WL 2600431 (S.D. Fla. Aug. 21, 2009), the court granted the insurer summary judgment, holding that an allegation of negligence alone did not create coverage:

> Also, no matter how the basis of the claim may have been creatively characterized by the plaintiff, we must look beyond the artfulness of the pleadings to decide whether a preclusion applies. *See, e.g., Cabezas v. Fla. Farm Bureau Cas. Ins. Co.*, 830 So. 2d 156, 157 (Fla. 3d DCA 2002) (concluding that where the alleged facts establish intentional conduct, but the claim alleges negligence, the negligence label should be disregarded); *see also State Farm Fire & Case. Co. v. Tippett*, 864 So. 2d 31, 35-36 (Fla. 4th DCA 2003) ("wording alone in a pleading does not create a duty to defend, regardless of its artfulness ... coverage issue should turn on the merits-on whatever a policy exclusion applies and not on creative pleading"); *Nateman v. Hartford Cas. Ins. Co.*, 544 So. 2d 1026, 1027 (Fla. 3d DCA 1989) ("creation of the basic insurer-insured relationship and the ensuing duty to defend cannot be left to the imagination of the drafter of a complaint").

*Id.* at *6-*7.[2]  The Purchaser Defendants' artful pleading of negligence does not create

coverage in this case.  The conduct at issue is not negligent or accidental conduct, it is

conduct designed to cause injury to the Purchaser Defendants.

In fact, the conduct described by the Purchaser Defendants in their complaints is

necessary to support their claim of fraudulent inducement, which by virtue of its

intentional nature, cannot constitute an "accident."  The complaints all state Ms. Hill, as

an agent of Leisure Tyme, represented that the outstanding loans on their traded-in RVs

***would be*** retired, and the sales documents contained the same representation.  The

complaints further state these representations "were made with the intent to induce" the

Purchaser Defendants to sign the contracts.  (Exhibit 2, Count II (FRAUD) of the

Purchaser Defendants' Complaints).  To succeed on a claim of promissory fraud under

Alabama law, a plaintiff must prove the representation was made with a ***present intent to***

***deceive*** and when the representation was made, ***the defendant intended not to perform*** in

accordance with it.  *See BellSouth Mobility, Inc. v. Cellulink, Inc.*, 814 So. 2d 203 (Ala.

2001).  Although the Purchaser Defendants plead the misrepresentations could have been

made recklessly or innocently, if they were, they would not be actionable, because intent

is a requisite of promissory fraud, without which all that remains is a breach of contract.

*See Goodyear Tire & Rubber Co. v. Washington*, 719 So. 2d 774, 776 (Ala. 1998) ("The

plaintiff cannot meet this burden merely by showing that the alleged promise ultimately

---

[2] It should be noted a different Florida federal court distinguished *HC Waterford* on the ground the breach of contract exclusion was broader than a contractual liability exclusion identical to the one in this case.  *Arnett v. Mid-Continent Cas. Co.*, No. 8:08-CV-2373-T-27EAJ, 2010 WL 2821981 (M.D. Fla. July 16, 2010).  In *Mid-Continent*, however, the insurer was unable to identify a liability assumed by its insured and the insured contractor was subject to statutory duties not applicable in this case.  Thus, the *Mid-Continent* holding is inapplicable here.

was not kept; otherwise, any breach of contract would constitute a fraud.") The intentional nature of the allegations cannot constitute an "accident" triggering coverage. *See U.S. Liability Ins. Co. v. Sternenberg Construction*, No. 2:10-cv-374-MEF, 2011 WL 3585261, *5 (M.D. Ala. Aug. 16. 2011) ("With respect to [the] repeated allegations of knowing and intentional fraudulent suppressions or promissory fraud, the Court finds as a matter of law that the underlying claims are clearly not based on a factual predicate within the definition of an 'occurrence.'")

In sum, the allegations of the underlying complaints do not assert an "accident" occurred, as required for coverage for under the Policy. The Court should therefore grant summary judgment for Plaintiff on this ground alone.

## II. The Purchaser Defendants' do not allege "bodily injury" or "property damage under the Policy.

Even if the underlying complaint had alleged an "accident", which it does not, there must be either "bodily injury" or "property damage" in order for the claims to be potentially covered under the Policy. Because there is neither, the Court should grant summary judgment for Plaintiff for this separate and independent reason.

### A. The Purchaser Defendants' alleged mental anguish does not constitute "bodily injury" under the Policy.

The Purchaser Defendants argue their claims of mental anguish constitute "bodily injury" as defined under the Policy. They concede Florida law will be applied to the interpretation of the Policy and, therefore, the scope of the term "bodily injury" will be determined based upon the meaning given to the term by Florida courts. (Doc. 29, pg. 13). To support the position that mental anguish constitutes "bodily injury," the

Purchaser Defendants cite to an outdated case never cited by any Florida courts, *McGuire v. American States Ins. Co.*, 491 So. 2d 606 (Fla. Dist. Ct. App. 1986). The *McGuire* court merely found that a genuine issue of material fact existed as to whether the plaintiff's allegations of mental distress, headaches and muscle spasms constituted "bodily injury."[3] It held the mental distress, headaches and muscle spasms that allegedly arose from the malicious prosecution and false imprisonment of the plaintiff "may be construed as bodily injury involving 'sickness and disease.'" In any event, no Florida court has cited *McGuire*, and more recent cases that are more directly on point clearly hold that the allegations here do not constitute "bodily injury."

As the Middle District of Florida noted in *Clohessy*, "In the context of insurance coverage, 'the overwhelming majority of jurisdictions which have considered the issue hold that "bodily injury" standing alone or defined in a policy as "bodily injury [or harm], sickness, or disease" is unambiguous and encompasses only physical harm.'" *Allstate Ins. Co. v. Clohessy*, 32 F.Supp.2d 1333, 1136 (M.D. Fla. 1998) *quoting Citizen's Ins. Co. of Am. v. Leiendecker*, 962 S.W.2d 446, 452 (Mo. Ct. App. 1998) (string citing cases from across the country for the proposition). The Florida courts that have actually decided whether mental anguish constitutes "bodily injury" follow the majority rule finding mental anguish is "bodily injury" only if it arises from physical contact.

The two Florida cases discussed in Plaintiff's Motion for Summary Judgment, *Allstate Ins. Co. v. Clohessy*, 32 F.Supp.2d 1333, 1336 (M.D. Fla. 1998) and *Allstate Ins.*

---

[3] *American States Ins. Co. v. McGuire*, 510 So. 2d 1227 (Fla. Dist. Ct. App. 1987).

*Co. v. McCranie*, 716 F.Supp. 1440 (S.D. Fla. 1989), were decided after *McGuire* and hold physical harm, even if it does not result in physical pain, is a requisite of "bodily injury." *See also Professional Staffing-A.B.T.S., Inc. v. Illinois Union Ins. Co.*, No. 8:04-CV-793T30EAJ, 2005 WL 2290243 (M.D. Fla. Sept. 19, 2005). In *Professional Staffing*, the court found the plaintiff's depression and posttraumatic stress disorder resulting from sexual battery constituted "bodily injury" only because the plaintiff suffered physical harm:

> It is this Court's opinion that a violation of one's person through a sexual battery such as the one committed upon Mrs. Whalen, which results in debilitating conditions such as depression and posttraumatic stress disorder, constitutes a bodily injury as defined by the Policy. *See Herrera*, 844 So.2d at 666 (finding that the physical intrusion of a cavity search which resulted in depression, headaches and a nervous breakdown sufficiently demonstrated a bodily injury under the policy).[FN2] *See also Allstate Ins. Co. v. McCranie*, 716 F.Supp. 1440, 1443 (S.D. Fla. 1989) (holding that the emotional distress resulting from physical contact or, more specifically, sexual molestation, constituted a bodily injury under insurance policy).

*Id.* at *1.

The *Professional Staffing* court specifically noted *Clohessy* held there was no "coverage for the emotional distress suffered after witnessing an accident involving their relative." *Id.* (citing *Clohessy*, 32 F.Supp.2d at 1333). The court distinguished *Clohessy*, making clear that direct physical harm was required for potential insurance coverage:

> As the insured parties [in *Clohessy*] did not sustained any direct physical harm, and only suffered emotional distress, this court determined the emotional distress the insured parties suffered did not constitute bodily injury under the terms of the insured's automobile insurance policy. *See id.* at 1334, 1336. Conversely, Mrs. Whalen did sustain direct physical harm, i.e. physical contact, irrespective of whether this physical harm manifested into physical pain.

*Id.* at *1.

Here, the Purchaser Defendants did not sustain physical harm at the hands of Leisure Tyme. Rather, the Purchaser Defendants allege mental anguish occurred upon learning that Leisure Tyme had breached their contracts. [4] Unlike the cases discussed by the court in *Professional Staffing*, and even *McGuire,* where the plaintiff was physically detained, the mental anguish alleged by the Purchaser Defendants does not arise from a tort against their persons and therefore is not covered.

The Purchaser Defendants conclude the section of their brief on "bodily injury" with a discussion of Alabama tort law and reach the conclusion that Alabama's rule of law allowing for the recovery for mental anguish without physical contact in certain situations should somehow trump Florida law on the interpretation of term "bodily injury" as it is used in insurance policies. The Purchaser Defendants miss the mark. The relevant inquiry is not whether the Purchaser Defendants can recover mental damages against Leisure Tyme. Rather, the issue is whether, under Florida law, mental anguish not arising from physical contact constitutes "bodily injury." It does not.

**B.     The Purchaser Defendants do not allege "property damage" covered by the Policy.**

---

[4] It should be noted the Purchaser Defendants' evidence regarding physical manifestations of mental anguish during the Policy period are weak at best. For instance, Mr. Pankratz "can't say … one way or the other" whether he is claiming medical damages; Mr. Cammauf was not caused to "suffer from any illness or condition;" Mr. McNally was treating for post-traumatic stress prior to the Leisure Tyme transaction; Mr. Wolfe has not "contracted any sickness" as a result of the transaction; and Ms. Wolfe was admitted to the hospital with heart problems around Thanksgiving 2009, months after the effective cancellation of the Policy, but the doctors "could not determine what caused the pain." (Pankratz Depo., p. 58; Cammauf Depo., p. 41; McNally Depo., pp. 76-77; G. Wolfe Depo., p. 37; J. Wolfe Depo., pp. 16-17, all produced as Exhibits to Purchaser Defendants' Opposition, Doc. 29).

The Purchaser Defendants contend their complaints seek recovery for "property damage" through a claim for the loss of use of the RVs they traded in. The Purchaser Defendants do not contest the fact their economic losses, the amounts Leisure Tyme misappropriated, do not qualify as "property damage."[5]   However, the Purchaser Defendants contend their complaints allege claims for the loss of use of their traded-in RVs. While a review of the underlying complaints does not reveal even a hint of a claim for the loss of use of the traded-in RVs, even if such a claim was made, as noted in footnotes 5 and 6 to the Plaintiff's Motion for Summary Judgment, policy exclusions apply to any potential loss of use claim. The Purchaser Defendants do not even address these two exclusions.

### 1.    Care, Custody and Control Exclusion

Exclusion 6, the Care, Custody and Control Exclusion, excludes "'Property damage' to [...] Property in the 'insured's' care, custody or control." Florida courts have made clear that application of the Care, Custody, or Control Exclusion depends on whether the property was in the *possessory* control of the insured at the time of the incident. *Essex Ins. v. Rodgers Bros. Services, Inc.*, No. 8:05-cv-00648-T-17-TBM, 2007 WL 2298356 at *8 (M.D. Fla. Aug. 7, 2007) (emphasis in the original). *See also Penn-America Ins. Co. v. Lucky Entertainment, LCC*, No. 8:08-cv-02538-EAK-AEP, 2010 WL 1645133 (M.D. Fla. April 22, 2010). Thus, "Florida … holds that where the insured has possessory control of the property, the exclusion applies." *Shankle v. VIP Lounge, Inc.*,

---

[5] As set forth in Plaintiff's Motion for Summary Judgment, economic losses do not constitute "property damage," which requires physical injury to tangible property. *See Lazzara Oil Co. v. Columbia Cas. Co.*, 683 F.Supp. 777, 780 (M.D. Fla. 1988) ("Such pure economic losses do not constitute damage or injury to tangible property.").

468 So. 2d 548, 549 (Fla. Dist. Ct. App. 1985).  *See also Phoenix of Hartford v. Holloway Corp.*, 268 So. 2d 195 (Fla. Dist. Ct. App. 1972).

In *Phoenix of Hartford*, the insureds were an equipment company and its president who were employed to move a piece of heavy equipment from a truck to a water tank at a construction site.  As the president was operating a crane owned by the company to move the equipment, the boom of the crane struck the side of the water tank, damaging the tank and the equipment.  The court held that because the equipment was within the insureds' possessory control at the time it was damaged, the Care, Custody or Control Exclusion applied and there was no coverage for the damage to the equipment.

If the Purchaser Defendants had suffered any "property damage," it took place after they relinquished possession of the traded-in RVs and while the traded-in RVs were in Leisure Tyme's possessory control.  Accordingly, the Care, Custody or Control Exclusion excludes coverage for "property damage" to the extent any is alleged by the Purchaser Defendants.

### 2.    Loss of Use Exclusion

Exclusion 14, the Loss of Use Exclusion, excludes coverage for "[l]oss of use of other property not physically damaged if caused by:  a. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms."  The crux of the Purchaser Defendants' claims against Leisure Tyme and Ms. Hill is the failure to perform contractual obligations by satisfying the outstanding balances on the traded-in RVs.  Therefore, even if the Purchaser Defendants alleged damages from loss of use of their traded-in RVs in the underlying lawsuits, those damages are excluded.

*See Landers Auto Group Number One, Inc. v. Continental Western Ins. Co.*, 621 F. 3d 810 (8th Cir. 2010).[6]

### III.    The Contractual Liability Exclusion precludes coverage.

Exclusion 2, the Contractual Liability Exclusion, which applies to both "bodily injury" and "property damage," excludes "[l]iability assumed under any contract or agreement."   The Purchaser Defendants contend the Policy's contractual liability exclusion is inapplicable, because they make claims of negligence, wantonness and fraud in an attempt to come within the exclusion's exception for liability "[t]hat the 'insured' would have in the absence of the contract or agreement." (Doc. 29, p. 16).

In support of their argument, the Purchaser Defendants cite *Underwriters at Lloyd's of London v. Gilbert Texas Const., L.P.*, 245 S.W.3d 29 (Tex. App. 2007), which involved a coverage dispute under an excess policy issued to a general contractor, Gilbert.  Gilbert was hired by DART in connection with the construction of a commuter rail system.  The construction project damaged a nearby building, and the building owner

---

[6] In *Landers Auto Group*, the plaintiff purchased a car at an auto dealership and financed the purchase through a financing company.  As part of a financing incentive and sales promotion, the dealership guaranteed the loan.  The plaintiff alleged the financing company failed to credit several of her payments and listed her as delinquent on the loan.  When the financing company contacted the dealership, the dealership paid the loan in full and repossessed the car.  The plaintiff sued the dealership and financing company, alleging wrongful repossession, conversion, and violations of the Arkansas Deceptive Trade Practices Act.  The dealership's insurer then filed a declaratory judgment action.  The Eighth Circuit affirmed the trial court's order granting summary judgment in the insurer's favor, holding several policy provisions precluded coverage.  Finding the Loss of Use Exclusion was one of the provisions which precluded coverage, the Eighth Circuit held:

> Coverage is further excluded under the provision regarding loss of use for failure to perform a contract or other agreement in accordance with its terms.  The damages in the … complaint arise from alleged breaches of the financing agreement between [the dealership, the financing company, and the plaintiff].

*Landers Auto Group*, 621 F.3d at 814.

sued Gilbert, alleging tort claims and a breach of contract claim contending it was a third-party beneficiary of the contract between Gilbert and DART.

Gilbert argued it was entitled to immunity for the building owner's tort claims and all claims were dismissed except the breach of contract claim. In a subsequent declaratory judgment action, the insurer argued coverage was excluded by the Contractual Liability Exclusion. Gilbert advanced the same argument the Purchaser Defendants advance here – that the liability it assumed by Gilbert under its contract with DART was coextensive with liability existing otherwise under the law and, therefore, the exception to the contractual liability exclusion operated to reinstate coverage.

However, the Texas Court of Appeals rejected the argument:

> Because the trial court concluded Gilbert was immune from tort liability, its only liability for damages arose by virtue of the liability it assumed under its contract with DART. But for the contract, all claims made by RT Realty against Gilbert would have been barred by governmental immunity. **Gilbert assumed liability under the contract that it would not have had under the law.** The exception, therefore, does not apply. The exclusion bars coverage.

*Underwriters*, 245 S.W.3d at 34-35 (emphasis added). Likewise, in this case, Leisure Tyme and Ms. Hill assumed liability under the contracts with the Purchaser Defendants that they would not have had under the law, so the Contractual Liability Exclusion bars coverage.

In this matter, the Purchaser Defendants had an obligation to pay the loan balances on their traded-in RVs before visiting Leisure Tyme. Leisure Tyme was not a party to those loans and had no obligation for any payments to the lienholders. Leisure Tyme would have had no obligation to pay the loan balances on the RVs the Purchaser

Defendants already owned, but for structuring the sales contracts to include an agreement to pay off the loans. Leisure Tyme contractually assumed liabilities it would not otherwise have had. Accordingly, the exception is inapplicable, and the Contractual Liability Exclusion precludes coverage.[7]

Regardless of the Purchaser Defendants' characterization of their claims, the underlying facts demonstrate the alleged damages arise out of Leisure Tyme's failure to perform its contractual obligations, rather than out of liability Leisure Tyme would have had in the absence of the sales contracts. As noted in *HC Waterford*, *infra*, artful pleading cannot create coverage. *See also Great American Ins. Co. v. Pearl Paint Co.*, 703 S.W.2d 601 (Mo. Ct. App. 1986) (contractual liability exclusion applied to insured's failure to fulfill agreement to provide employee with health insurance despite employee's attempt to characterize claims as arising from tort rather than contract).

## CONCLUSION

As set forth above, NHIC is entitled to a final summary judgment, as it has no obligation to defend or indemnify Leisure Tyme or Ms. Hill for the claims made by the Purchaser Defendants. For these reasons, Plaintiff's Motion for Summary Judgment is due to be GRANTED.

---

[7] The Purchaser Defendants also cite two Florida cases, *Western World Ins. Co., Inc. v. Travelers Indemn. Co.*, 358 So. 2d 602 (Fla. Dist. Ct. App. 1978) and *National Indem. Co. v. Ryder Truck Rental, Inc.*, 472 So. 2d 856 (Fla. Dist. Ct. App. 1985), which stand for the same proposition as *Underwriters* – that the contractual liability exclusion excludes from coverage the insured's liability which has merely been reaffirmed by contract. *Western World* involved a coverage dispute over a surety bond with facts dissimilar to this case. *Ryder Truck* concerned an insured lessee's liability to the lessor arising from its vicarious liability for the negligence of its employee, which would have existed even in the absence of the indemnity provision the lessee's insurer contended triggered the contractual liability exclusion.
The differences between this case and *Ryder Truck* illustrate why the exception to the contractual liability exclusion does not apply in this case. Had it not structured the sales transactions to assume the Purchaser Defendants' liabilities for the outstanding balances on their loans, Leisure Tyme would have had no independent obligation to pay the lienholders. Therefore, the exception to the exclusion is inapplicable.

s/  John W. Dodson
John W. Dodson          (DOD012)
Michelle L. Crunk       (CRU017)
*Attorneys for New Hampshire Ins. Co*

OF COUNSEL:
FERGUSON, FROST & DODSON, LLP
Post Office Box 430189
Birmingham, Alabama 35243-0189
(205) 879-8722 phone, (205) 879-8831 fax
jwd@ffdlaw.com
mlc@ffdlaw.com

## CERTIFICATE OF SERVICE

This is to certify that on this the 25th day of May, 2012, a copy of the foregoing document has been served upon counsel for all parties to this proceeding via e-file.

Earl P. Underwood, Jr.                    James P. Coleman
Underwood & Riemer, P.C.                  Murchison & Howard, LLC
21 South Section Street                   Post Office Box 2147
Fairhope, AL 36532-2206                   Foley, Alabama  36536

s/  John W. Dodson
OF COUNSEL