# EXHIBIT "1"

*ARBITRATION*

📖 COPY

*ANTHONY AND EVA N. CORTESE,*
*et al.,*

                    *Plaintiffs,*

*vs.*

*LEISURE TYME RV, INC. and PEN AIR,*

                    *Defendants.*

*THE DEPOSITION OF: GAYLE HILL*

*The deposition of GAYLE HILL, was taken*
*before LAUREN S. DORGAN, as Commissioner, in the law*
*offices of Underwood & Reimer, P.C., located at 21*
*South Section Street in Fairhope, Alabama, on November 18,*
*2010, commencing at approximately 9:45 a.m.*

Lauren S. Dorgan, Certified Court Reporter
(251) 990-3893

---

A P P E A R A N C E S

REPRESENTING THE PLAINTIFFS:

    JAMES D. PATTERSON, ESQUIRE
    Underwood & Riemer, P.C.
    166 Government Street
    Mobile, Alabama  36602

REPRESENTING THE DEFENDANTS:
(Leisure Tyme RV, Inc.)

    JOEY HORNSBY, ESQUIRE
    Shealy, Crum & Pike, PC
    2346 West Main Street
    Suite 1
    Dothan, Alabama  36302

(Pen Air Federal Credit Union)

    JAMES N. NOLAN, ESQUIRE
    Constagny, Brooks & Smith, LLP
    1819 5th Avenue North
    Suite 300
    Birmingham, Alabama  35203

Lauren S. Dorgan, Certified Court Reporter
(251) 990-3893

---

(Army Aviation Credit Union)

    CHAD BRYAN, ESQUIRE
    Cappell & Howard, P.C.
    150 S. Perry Street
    Montgomery, Alabama  36104

ALSO PRESENT:        KATHY ROGERS

                     LAUREN S. DORGAN
                     Court Reporter

Lauren S. Dorgan, Certified Court Reporter
(251) 990-3893

---

I N D E X

ITEM:                                          PAGE:

STIPULATION PAGE: . . . . . . . . . . . . . .   5

DEPONENT:

  GAYLE HILL:

    Examination by Mr. Patterson: . . . . . .   7

    Examination by Mr. Nolan: . . . . . . . .  79

    Examination by Mr. Bryan: . . . . . . . .  85

    Further Examination by Mr. Patterson: . .  91

    Examination by Mr. Hornsby: . . . . . . .  99

    Further Examination by Mr. Patterson: . . 100

    Further Examination by Mr. Nolan: . . . . 101

    Further Examination by Mr. Hornsby: . . . 104

REPORTER'S CERTIFICATE: . . . . . . . . . . 106

Lauren S. Dorgan, Certified Court Reporter
(251) 990-3893

```
1    Q.    Had your business started having some financial
2    problems at that point?
3    A.    We had had cash flow issues off and on for 30
4    years, it's the nature of the industry.
5    Q.    Prior to Mr. Pancratz' purchase on 6/4/2008 had
6    Leisure Tyme ever not paid off a trade-in RV on a
7    sale?
8    A.    No.
9    Q.    What was the first one where Leisure Tyme did
10   not pay off a trade-in?
11   A.    I guess you're looking at this list, that's the
12   list of them, I'm guessing Pancratz was the first one.
13   Q.    Other than the clients that I'm representing in
14   this case were there any other individuals that did
15   not get their traded in RVs paid off?
16   A.    To be honest with you I don't remember, you have
17   asked me that question through --
18   Q.    -- interrogatories?
19   A.    Yes, and I know that I sent a list.  I truly
20   don't remember whether this is a complete list or not.
21   I'm not aware of anyone else that's suing me, so I
22   would guess it's a complete list.
23   Q.    Steve Steplowski, is that a name that rings a
```

```
1    bell?
2    A.    Yes.
3    Q.    And Floyd Lucas?
4    A.    Yes, they're both repeat customers.
5    Q.    Were those two other individuals that sued you
6    in a similar situation?
7    A.    That could very well be.  I think they settled.
8    Q.    Their trade-ins were not paid off at the time of
9    the purchase?
10   A.    That list was the list of everything.
11   Q.    This list would represent all the individuals
12   that did not have their trade-ins paid off by Leisure
13   Tyme?
14   A.    Correct, to the best of my knowledge.
15   Q.    Mr. Steve Steplowski and Mr. Floyd Lucas, where
16   did they make their purchases at?
17   A.    Mary Esther.
18   Q.    Do you recall how much was not paid off on their
19   trade-ins?
20   A.    No, I do not, it's probably on that list.
21   Q.    You said they were both repeat customers at
22   Leisure Tyme?
23   A.    Yes.
```

```
1    Q.    When did the sales of those two vehicles take
2    place?
3    A.    I couldn't tell you without looking it up.
4    Q.    Was it around the same time as my clients?
5    A.    Probably.
6    Q.    With regards to Mr. Pancratz, you're telling me
7    he was the first deal where you did not pay off the
8    trade-in, would that be correct?
9    A.    The first one that we didn't get paid off, yes,
10   correct.
11   Q.    What did you do with the funds that you did not
12   pay off Bank of America on his loan, what did you do
13   with the funds?
14   A.    They went into the Leisure Tyme operating
15   account.
16   Q.    What were those funds used for?
17   A.    Operating.
18   Q.    Just describe for me operating.
19   A.    Everything, all overhead, payroll, floor plan
20   interest, insurance, curtailments to the banks,
21   mortgage payments, regular bills, everything.
22   Q.    Looking at prior to Mr. Pancratz when a purchase
23   was made and financing was provided for a deal, would
```

```
1    Leisure Tyme immediately issue a check on the
2    trade-in?
3    A.    Not immediately, no.
4    Q.    How long would that process normally take?
5    A.    Anywhere from a week to as much as a couple of
6    months.
7    Q.    So sometimes a trade in would not be paid off
8    right off the bat?
9    A.    Yes.
10   Q.    Would a customer call and complain about that?
11   A.    Occasionally.
12   Q.    What would Leisure Tyme do to rectify that
13   situation?
14   A.    Pay it off.
15   Q.    Would Leisure Tyme make payments on the trade
16   in?
17   A.    We had been known to reimburse the customer or
18   make a payment on it, yes, to make sure the customer's
19   credit didn't get affected.
20   Q.    Had that been something that was happening
21   recently in 2008 or had that been a practice for
22   years?
23   A.    I wouldn't call it a practice, it had occurred
```

# EXHIBIT "2"

IN THE CIRCUIT COURT, IN AND FOR OKALOOSA COUNTY, FLORIDA
CIVIL DIVISION

WACHOVIA DEALER SERVICES,
INC.

      Plaintiff,

Case No. ___2009 CA 007327 S___

v.

NATIONAL CITY BANK,
a division of PNC BANK, N.A.,
STATE OF FLORIDA
DEPARTMENT OF HIGHWAY SAFETY
AND MOTOR VEHICLES,

      Defendants,

v.

JOHN A. PANKRATZ

      Defendant/Cross-claim Plaintiff,

v.

LEISURE TYME RV, INC.;
BRANCH BANKING & TRUST CO.;
GAYLE HILL; NATIONAL CITY
BANK and A THROUGH Z,
being those persons or
entities who are responsible for the
wrongful acts and omissions alleged
herein and whose names are
not known to Plaintiffs, but will be
supplied when ascertained,

      Cross-Claim Defendants.

**JURY TRIAL DEMANDED**

## ANSWER AND CROSS-CLAIM

Now comes defendant JOHN A. PANKRATZ and in his answer to the complaint of

WACHOVIA DEALER SERVICES, INC states as follows:

1.　　Defendant admits paragraphs 1 thru 6 of the complaint.

2.　　Defendant does not have sufficient knowledge to form a belief as to the truth of the allegations in paragraph 7-9.

3.　　Defendant denies paragraphs 10.

4.　　Defendant does not have sufficient knowledge to form a belief as to the truth of the allegations in paragraph 11-12.

5.　　Defendant admits paragraph 13.

6.　　Defendant does not have sufficient knowledge to form a belief as to the truth of the allegations paragraph 14-16.

7.　　Defendant admits paragraph 17.

8.　　Defendant does not have sufficient knowledge to form a belief as to the truth of the allegations paragraph 18-19.

9.　　Defendant reserves the right to amend this answer after discovery is completed.

## AFFIRMATIVE DEFENSES

10.　　On the face of the complaint Mr. Pankratz is not the real party in interest and the Defendant has no standing to bring this case.

11.　　Defendant has failed to mitigate his damages.

12.　　Mr. Pankratz pleads the allegations of his cross-claim in defense hereto.

## CROSS-CLAIMS

2

NOW COMES, JOHN A. PANKRATZ, (hereinafter "Mr. Pankratz" and "Cross-claim Plaintiff") individually and asserts his cross-claims against Cross-Claim Defendants, **NATIONAL CITY BANK, LEISURE TYME RV, INC., BRANCH BANKING & TRUST CO., GAYLE HILL,** and fictitious parties A though Z.

## PARTIES

1.      Mr. Pankratz is a natural person and adult resident of Okaloosa County, Florida.

2.      Defendant, Leisure Tyme RV, Inc., ("Leisure Tyme"), is a corporation formed outside the State of Alabama, with its principal place of business in Mary Esther, Florida. At all relevant times, Leisure Tyme did business in the State of Florida and operated a RV dealership in Okaloosa County, Florida.

3.      Defendant, Branch Banking & Trust Co. ("BB&T") is a banking institution formed outside the State of Alabama with its principal place of business in Lumberton, North Carolina. BB&T does business in the State of Florida.

4.      Defendant, National City Bank ("National") is a banking institution formed outside the State of Alabama with its principal place of business in Brecksville, Ohio. National does business in the State of Florida.

5.      Defendant, Gayle Hill is an adult resident of the State of Florida.

6.      Defendants, A through Z are these individuals and entities who are liable for the claims asserted herein, but whose names are not now known to Mr. Pankratz.

## FACTUAL ALLEGATIONS

7.      Mr. Pankratz lives and works in Okaloosa County and spends much of his free time traveling in his motor home. In the summer, 2008, Mr. Pankratz decided to trade his 2004

3

Newmar Essex motor home ("2004 Newmar") for a new motor home. Beginning in late June 2008, Plaintiff discussed with Defendant Leisure Tyme the purchase of a 2008 Mountain Aire, model 4528, which was on Leisure Tyme's lot in Mary Esther, Florida. The VIN for that motor home is 4VZAT1C968C057632.

8.    On or about June 4, 2008, Cross-claim Plaintiff and Leisure Tyme agreed on terms for purchase of the new Mountain Aire. As part of the purchase of the Mountain Aire, the Mr. Pankratz agreed to trade in his 2004 Newmar and apply the equity against the purchase price of the Mountain Aire. The VIN for the Newmar is 4VZAT1C904C047026. The Newmar was purchased from Leisure Tyme with a loan from National City ("National") in 2005. The loan was secured by a lien on the 2004 Newmar with an amount owed estimated at $290,000 at the time of the trade in. During the sale and the negotiations leading up to the sale, Mr. Pankratz dealt with Gayle Hill, the general manager and owner of Leisure Tyme.

9.    Defendant Leisure Tyme agreed, as a condition of purchasing the Mountain Aire, it would pay off the remaining balance of the lien owed to National. Leisure Tyme assumed responsibility for taking the steps necessary for removal of the lien on the 2004 Newmar. Mr. Pankratz filled out paperwork necessary for Leisure Tyme to be able to act on his behalf in connection with paying off the National loan. Mr. Pankratz and Defendants finalized all the paperwork for the purchase of the Mountain Aire that day and Mr. Pankratz left with the Mountain Aire.

10.    The purchase of the 2008 Mountain Aire was funded through a loan with Defendant BB&T. This was arranged by Leisure Tyme. BB&T was selected by Leisure Tyme.

4

11.     Through the paperwork presented to Mr. Pankratz and the verbal representations of Gayle Hill, among others, Leisure Tyme represented that the outstanding debt owed to National would be immediately retired in full from the proceeds from the BB&T Loan. Mr. Pankratz relied on those representations when he decided to purchase the Mountain Aire and expected that he would owe nothing further to National, had Mr. Pankratz known that the National loan would not be retired, he would have never agreed to purchase the Mountain Aire and take on the additional loan obligation. The loan proceeds from BB&T should have included amounts needed to retire the debt owed to National.

12.     When he left the Leisure Tyme dealership on June 4, 2008, Mr. Pankratz believed that he would not owe another payment to National.

13.     At or around the date of the closing, BB&T tendered to Leisure Tyme the funds needed to pay off the National loan. Those funds were tendered by check made payable only to Leisure Tyme, or the loan proceeds were otherwise tendered in a manner which did not require an endorsement by National and/or Mr. Pankratz. This allowed Leisure Tyme and its employees to use the funds in a manner other than paying off the National loan.

14.     About a month after the closing, Mr. Pankratz received a collection call from National requesting payment for June 2008, which the collector said was past due. Mr. Pankratz explained to the collector that he had traded the 2004 Newmar in and that Leisure Tyme should have paid the loan off in full. Mr. Pankratz then called Gayle Hill to find out why the loan had not been paid. Hill explained that the payoff had not been made because they were still processing the title work but that would soon be completed and the payment would be made. She instructed Mr. Pankratz to, in the meantime, make the June payment to National to bring the

5

loan current. At the same time, Leisure Tyme was doing some repair work on Mr. Pankratz's RV. Hill stated that the amount of his payment to National would be deducted from the amount he owed Leisure Tyme on the repair bill. In August and September Mr. Pankratz continued to receive collection calls from National. Each time he would explain the situation to the collector. Each time, Mr. Pankratz would call Hill who assured him that the payoff would be made soon but to keep making payments to National and Leisure Tyme would reimburse him. By this time, he was required to make regular payments on his new loan with BB&T for the new Mountain Aire. Based on Hill representations, he expected the matter to be resolved.

15.     When he received yet another collection call in October, Mr. Pankratz drove to Leisure Tyme's office and confronted Hill about the problem. Hill stated that they were still having "paperwork" problems. She gave him a check for the next payment to National and thanked him for his patience. She assured him that the problem would soon be resolved. Mr. Pankratz continued to make payments to National and was reimbursed by Leisure Tyme for those payments until January 2009 when Mr. Pankratz was informed that Leisure Tyme was closed. Mr. Pankratz tried to get in touch with Hill but never heard from her or anyone else at Leisure Tyme.

16.     In February, Mr. Pankratz received more collection calls from National. Once again, Mr. Pankratz explained the situation to the collector and explained that he no longer owned the coach secured by National's loan. He also explained that Leisure Tyme was out of business. At all times, Mr. Pankratz explained the situation fully to the National collectors that would regularly call him about the loan payments. He provided National all the contact information he had for Hill and Leisure Tyme.

6

17.    In June 2009, Mr. Pankratz received a notice that Leisure Tyme was filing for bankruptcy.

18.    Throughout the remainder of 2009, National barraged Mr. Pankratz with numerous harassing phone calls. Calls were made every day and often several times per day. The Pankratz's received up to 70 calls per day. There was no legitimate purpose for the repetitious calls. National was fully informed of the situation and there was no point in calling with this frequency except to harass Cross-claim Plaintiff into paying the debt.

19.    At all relevant times, Gayle Hill acted as an employed agent of Leisure Tyme.

20.    The claims made herein against Defendant Leisure Tyme are made solely to determine the value of those claims so that Cross-claim Plaintiff may collect on said claims out of any bond or insurance coverage that may be available to pay him. Nothing stated herein is intended as, nor should be interpreted as, an effort to exceed the authority granted to Cross-claim Plaintiff by the order of the United States Bankruptcy Court for the Northern District of Florida dated July 13, 2009 and issued in the case styled In Re Leisure Tyme RV, Inc., Case No. 09-30419-LMK.

## COUNT I
## (BREACH OF CONTRACT AGAINST LEISURE TYME AND HILL)

21.    The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

22.    Leisure Tyme has breached the purchase agreement with Mr. Pankratz by failing to retire the National loan as promised.

7

23.     Mr. Pankratz has suffered damage as a proximate result of Defendant's breach.

WHEREFORE, Cross-claim Plaintiff requests that this Court enter judgment against Defendant Leisure Tyme for beach of contract and award him compensatory damages, including damages for mental anguish and emotional distress; plus interest and costs. Cross-claim Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT II
## (FRAUD AGAINST LEISURE TYME AND HILL)

24.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

25.     Defendant Gayle Hill, acting as an agent and/or an employee of Leisure Tyme, represented to Mr. Pankratz that, upon closing of the purchase of the 2008 Mountain Aire, the outstanding National loan on the 2004 Newmar would be retired. This representation was also made by Leisure Tyme in the sales documents it prepared and delivered to Mr. Pankratz on the day of the closing.

26.     Those statements were made with the intent to induce Mr. Pankratz into signing the purchase contract for the 2008 Mountain Aire. The representations were relied upon by Mr. Pankratz to his detriment.

27.     The representations made by Defendants were false when made and said Defendant knew them to be false when they were made.   In the alternative, the misrepresentations were made willfully to deceive, or recklessly without knowledge or were made innocently by mistake; but were, in any case, relied upon by the Mr. Pankratz to his detriment.

8

28.    Mr. Pankratz has suffered damage as a proximate result of the Defendants' fraud.

WHEREFORE, Cross-claim Plaintiff requests that this Court enter a judgment against Defendants Hill and Leisure Tyme for fraud and award Cross-claim Plaintiff compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs. Cross-claim Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT III
## (WANTONNESS AGAINST LEISURE TYME, HILL AND BB&T)

29.    The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

30.    The acts and omissions made by Defendants Hill and Leisure Tyme in failing to pay the funds received through the purchase of the 2008 Mountain Aire to retire the National loan all constitute wantonness and were made with a wanton, reckless or conscious disregard for the Mr. Pankratz's rights and welfare. National has also wantonly hired, trained and supervised their employees.

31.    Mr. Pankratz has suffered damage as a proximate result of the Defendants' wantonness.

WHEREFORE, Cross-claim Plaintiff requests that this Court enter a judgment against National for wantonness and award Cross-claim Plaintiff compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs. Cross-claim Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT IV

9

## (WANTONNESS AGAINST NATIONAL)

32.   The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

33.   The acts and omissions made by National in making numerous, repeated and harassing phone calls to Cross-Claim Plaintiff in the absence of any legitimate purpose constitute wantonness and were made with a wanton, reckless or conscious disregard for the Mr. Pankratz's rights and welfare.

34.   National has also wantonly hired, trained and supervised their employees.

35.   Mr. Pankratz has suffered damage as a proximate result of the National's wantonness.

WHEREFORE, Cross-claim Plaintiff requests that this Court enter a judgment against National for wantonness and award Cross-claim Plaintiff compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs. Cross-claim Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT V
## (NEGLIGENCE AGAINST LEISURE TYME, HILL AND BB&T)

36.   The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

37.   The acts and omissions made by Defendants Hill and Leisure Tyme in failing to pay the funds received through the purchase of the 2008 Mountain Aire to retire the National loan all constitute negligence.

38.     The acts and omissions made by Defendant BB&T in tendering to Leisure Tyme the funds needed to pay off the National loan constitute negligence.

39.     Defendants Leisure Tyme and BB&T have also negligently hired, trained and supervised their employees.

40.     Mr. Pankratz has suffered damage as a proximate result of the Defendants' negligence.

WHEREFORE, Cross-claim Plaintiff requests that this Court enter a judgment against Defendants Leisure Tyme, Hill, and BB&T for negligence and award them compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Cross-claim Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT VI
## (NEGLIGENCE AGAINST NATIONAL)

41.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

42.     The acts and omissions made by National in making numerous, repeated and harassing phone calls to Cross-Claim Plaintiff in the absence of any legitimate purpose constitute negligence.

43.     National has also negligently hired, trained and supervised their employees.

44.     Mr. Pankratz has suffered damage as a proximate result of the National's negligence.

11

WHEREFORE, Cross-claim Plaintiff requests that this Court enter a judgment against National for negligence and award him compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Cross-claim Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT VII
### (INVASION OF PRIVACY AGAINST NATIONAL)

45.     Mr. Pankratz adopts and reasserts each and every allegation in each of the preceding paragraphs.

46.     The actions taken by National in repeatedly calling Mr. Pankratz's home, cell phone, and work, in attempting to collect the debt from Mr. Pankratz, which was to be paid off by Leisure Tyme, were made with no legitimate purpose but for the sole purpose of harassment. These actions constitute a wrongful invasion of Mr. Pankratz's privacy. Defendants' actions caused wrongful intrusion upon Mr. Pankratz's home and work place which has disrupted and harmed Mr. Pankratz in such a manner as to cause outrage, mental suffering, shame and humiliation to any person with ordinary sensibilities.

WHEREFORE, Cross-claim Plaintiff requests that this Court enter a judgment against Defendant National for invasion of privacy and award Cross-claim Plaintiff compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs. Cross-claim Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT VIII
### (OUTRAGE AGAINST NATIONAL)

12

47.   Mr. Pankratz adopts and reasserts each and every allegation in each of the preceding paragraphs.

48.   National's conduct as described herein constitutes actionable outrage under applicable law.

49.   National's conduct as described herein exceeds all possible bounds of decency and was committed with either the intent to cause Mr. Pankratz emotional distress or recklessly without regard to the Mr. Pankratz welfare and well-being. Said conduct caused Mr. Pankratz to suffer damage, including mental anguish and emotional distress.

WHEREFORE, Cross-claim Plaintiff requests that this Court enter a judgment against Defendant National for outrage and award Cross-claim Plaintiff compensatory damages, including damages for mental anguish and emotional distress and punitive damages, plus interest and costs. Cross-claim Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

**MR. PANKRATZ DEMANDS A TRIAL BY JURY AS TO ALL CLAIMS, DEFENSES AND COUNTERCLAIMS ASSERTED IN THIS MATTER.**

C. Phil Hall (Fla. Bar No.: 0621145)
Kenneth J. Riemer
James D. Patterson (PAT068)
Earl P. Underwood
Attorney for Mr. Pankratz
166   Government   Street,   Suite   100
Mobile, Alabama 36602
251.432.9212
251.433.7172 (fax)

13

kjr@alaconsumerlaw.com
jpatterson@alalaw.com

epunderwood@alalaw.com

ELECTRONICALLY FILED
3/24/2010 9:33 AM
CV-2010-900510.00
CIRCUIT COURT OF
BALDWIN COUNTY, ALABAMA
JODY WISE CAMPBELL, CLERK

## IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA

| | | |
|---|---|---|
| RODNEY I. CAMMAUF, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | CV-2010- |
| | ) | |
| LEISURE TYME RV, INC.; | ) | |
| PEN AIR FEDERAL CREDIT UNION; | ) | |
| and A THROUGH Z, | ) | |
| being those persons or entities who | ) | **JURY TRIAL DEMANDED** |
| are responsible for the wrongful | ) | |
| acts and omissions alleged herein | ) | |
| and whose names are not known to | ) | |
| Plaintiff, but will be supplied when | ) | |
| ascertained, | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

**NOW COMES** Plaintiff Rodney I. Cammauf and, as his Complaint against the above-described Defendants, assert as follows:

### PARTIES

1.   Plaintiff is a natural person and adult resident of Escambia County, Florida.

2.   Defendant Leisure Tyme RV, Inc. ("Leisure Tyme") is a corporation formed outside the State of Alabama, with its principal place of business in Mary Esther, Florida.  At all relevant times, Leisure Tyme did business in the State of Alabama and operated a RV dealership in Baldwin County, Alabama.

3.   Defendant Pen Air Federal Credit Union ("Pen Air") is a banking institution formed outside the State of Alabama with its principal place of business in Pensacola, Florida.  Pen Air does business in Baldwin County, Alabama.

4.    Defendants A through Z are those individuals and entities who are liable for the claims asserted herein, but whose names are not now known to Plaintiff.

## FACTUAL ALLEGATIONS

5.    Plaintiff lives in Escambia County and spends much of his time working and traveling in his motor home.  In the fall of 2008, Plaintiff decided to trade his 2001 Fleetwood Discovery ("2001 Fleetwood") for a new motor home.  Beginning in late November 2008, Plaintiff discussed with Defendant Leisure Tyme the purchase of a 2008 Newmar Ventura ("2008 Newman"), stock number P3462, which was on Leisure Tyme's lot in Summerdale Alabama. The VIN for that motor home is 4VZBN1B988C060466.

6.    On or about November 26, 2008, Plaintiff and Leisure Tyme agreed on terms for purchase of the new 2008 Newmar.  As part of the purchase of the 2008 Newmar, the Plaintiff agreed to trade in his 2001 Fleetwood and apply the equity against the purchase price of the 2008 Newmar.

7.    The VIN for the 2001 Fleetwood is 4UZAAHBV41CH79152.   The 2001 Fleetwood was purchased with a loan from Thor Credit Corp. ("GEMB Lending") and in November 2008, a balance of $81,719.74 was owed.  The GEMB Lending loan was secured by a lien on the 2001 Fleetwood.

8.    During the sale and the negotiations leading up to the purchase, Plaintiff dealt with John Watters, a sales representative, and Gayle Hill, the owner of Leisure Tyme.

9.    Defendant Leisure Tyme agreed, as a condition of purchasing the 2008 Newmar, it would pay off the remaining balance of the lien owed to GEMB Lending. Leisure Tyme assumed responsibility for taking the steps necessary for removal of the lien on the 2001

2

Fleetwood. Plaintiff filled out paperwork necessary for Leisure Tyme to be able to act on his behalf in connection with paying off the GEMB Lending loan.   Plaintiff and Defendants finalized all the paperwork for the purchase of the 2008 Newmar that day and Plaintiff left with the 2008 Newmar.

10.   The purchase price for the 2008 Newmar was $223,814.38, including taxes and fees. Plaintiff was given a credit of $126,566.00 for the value of the 2001 Fleetwood and was charged the $81,719.74 necessary to pay off the GEMB Lending loan.   The net purchase price was $172,000.00.

11.   The purchase of the 2008 Newmar was funded through a loan with Defendant Pen Air and upon information and belief, a very close business relationship existed between Pen Air and Leisure Tyme and Pen Air referred many of its customers to Leisure Tyme for the purchasing of RV's financed by Pen Air.

12.   The check tendered by Pen Air directly to Leisure Tyme included the funds which were to be used to pay off the GEMB loan.  By tendering the funds directly to Leisure Tyme, Pen Air allowed the check to be negotiated without any endorsement by GEMB. This allowed Leisure Tyme and its employees to use the funds in a manner other than paying off the GEMB loan. Upon information and belief, this was the result of an arrangement between Leisure Tyme and Pen Air.  Pen Air knew or should have known tendering funds in this manner created a substantial risk that the existing loans owed by Leisure Tyme's customers, like Plaintiff, would not be paid off.

13. Leisure Tyme has failed to pay off the GEMB loan and has diverted the funds intended for that purpose for its own use or the use of its employees or agents. As a result, Plaintiff continued to be indebted to GEMB for the unpaid balance of the 2004 Newmar loan.

14. Through the paperwork presented to Plaintiff and the verbal representations of Mr. Watters and Ms. Hill, among others, Leisure Tyme represented that the outstanding debt owed to GEMB Lending would be immediately retired in full from the proceeds from the Pen Air loan. Plaintiff relied on those representations when he decided to purchase the 2008 Newmar and expected that he would owe nothing further to GEMB Lending. Had Plaintiff known that the GEMB Lending loan would not be retired, he would have never agreed to purchase the 2008 Newmar and take on the additional loan obligation.

15. When he left the Leisure Tyme dealership on November 26, 2008, Plaintiff believed that he would not owe another payment to GEMB Lending.

16. In February 2009, the Plaintiff discovered that GEMB Lending was still withdrawing the loan amount from his checking account for the 2001 Fleetwood which was to be paid in full by Leisure Tyme at the time of closing. He contacted Leisure Tyme and they stated that his paperwork had been "misfiled" and reimbursed him for the three payments that had been withdrawn.

17. Leisure Tyme and/or Pen Air have failed to pay off the GEMB loan in full as required and as represented. Over $81,719.74 remains unpaid and a delinquent debt obligation to GEMB remains on the Plaintiff's credit file. This has caused significant damage to the Plaintiff's credit rating.

4

18.     On July 7, 2009, Plaintiff received a notice from GEMB Lending stating the 2001 Fleetwood would be sold at auction.     On information and belief, the RV was sold and a deficiency balance remains that is still causing damage to the Plaintiff's credit.

19.     At all relevant times, Gayle Hill and John Watters acted as employees and/or agents of Leisure Tyme.

20.     The claims made herein against Defendant Leisure Tyme are made solely to determine the value of those claims so that Plaintiff may collect on said claims out of any bond or insurance coverage that may be available to pay them.  Nothing stated herein is intended as, nor should be interpreted as, an effort to exceed the authority granted to Plaintiff by the order of the United States Bankruptcy Court for the Northern District of Florida dated July 13, 2009 and issued in the case styled In Re Leisure Tyme RV, Inc., Case No. 09-30419-LMK.

## COUNT I
## (BREACH OF CONTRACT)

21.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

22.     Leisure Tyme has breached the purchase agreement with Plaintiff by failing to retire the GEMB Lending loan as promised.

23.     Plaintiff has suffered damage as a proximate result of Defendant's breach.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant Leisure Tyme for beach of contract and award him compensatory damages, including damages for mental anguish and emotional distress; plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

5

## COUNT II
### (FRAUD)

24.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

25.     Gayle Hill, acting as an agent and/or an employee of Leisure Tyme, represented to Plaintiff that, upon closing of the purchase of the 2008 Newmar, the outstanding GEMB Lending loan on the 2001 Fleetwood would be retired.  This representation was also made by Leisure Tyme in the sales documents it prepared and delivered to Plaintiff on the day of the closing.

26.     Those statements were made with the intent to induce Plaintiff into signing the purchase contract for the 2008 Newmar.  The representations were relied upon by Plaintiff to his detriment.

27.     The representations made by Defendants were false when made and said Defendants knew them to be false when they were made.   In the alternative, the misrepresentations were made willfully to deceive, or recklessly without knowledge or were made innocently by mistake; but were, in any case, relied upon by the Plaintiff to their detriment.

28.     Plaintiff has suffered damage as a proximate result of the Defendants' fraud.

WHEREFORE, Plaintiff requests that this Court enters a judgment against Defendant Leisure Tyme for fraud and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs.  Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

6

## COUNT III
## (WANTONNESS)

29.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

30.     The acts and omissions made by Leisure Tyme in failing to pay the funds received through the purchase of the 2008 Newmar to retire the GEMB Lending loan all constitute wantonness and were made with a wanton, reckless or conscious disregard for the Plaintiff's rights and welfare.

31.     The acts and omissions made by Defendant Pen Air in tendering to Leisure Tyme the funds needed to pay off the GEMB Lending loan constitute wantonness and were made with a wanton, reckless or conscious disregard for the Plaintiff's rights and welfare.

32.     Defendants Leisure Tyme and Pen Air have also wantonly hired, trained and supervised their employees.

33.     Plaintiff has suffered damage as a proximate result of the Defendants' wantonness.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants Leisure Tyme and Pen Air for wantonness and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT IV
## (NEGLIGENCE)

34.     The allegations stated in all of the above paragraphs are incorporated as if fully

7

asserted herein.

35.     The acts and omissions made by Leisure Tyme in failing to pay the funds received through the purchase of the 2008 Newmar to retire the GEMB Lending loan all constitute negligence.

36.     The acts and omissions made by Defendant Pen Air in tendering to Leisure Tyme the funds needed to pay off the GEMB Lending loan constitute negligence.

37.     Defendants Leisure Tyme and Pen Air have also negligently hired, trained and supervised their employees.

38.     Plaintiff has suffered damage as a proximate result of the Defendants' negligence.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants Leisure Tyme and Pen Air for negligence and award them compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT V
### (DECEPTIVE TRADE)

39.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

40.     The actions taken by Defendants in inducing Plaintiff into the purchase of the 2008 Newmar and then failing to pay sums received from the purchase to retire the GEMB Lending loan constitute a deceptive trade practice as defined in Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1 et seq. (1975)(the "Act").

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants for violation of the Act and award Plaintiff treble damage, pursuant to Section 8-19-10(2), plus

attorneys fees, expenses and costs.  Plaintiff further requests such other relief as the Court deems

just and proper, the premises considered.

**TRIAL BY JURY IS HEREBY REQUESTED AS TO ALL CLAIMS ASSERTED**

**RESPECTFULLY SUBMITTED;**

**DATED this day 24th of March, 2010.**

<div style="margin-left:40%;">

s/ James D. Patterson
James D. Patterson (PAT068)
Kenneth J. Riemer (RIE003)
Earl P. Underwood, Jr. (UND008)
Attorneys for Plaintiff
166 Government Street, Suite 100
Mobile, Alabama 36602
251.432.9212 (telephone)
251.433.7172 (fax)
jpatterson@alalaw.com

</div>

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:**

**Leisure Tyme RV, Inc.**
**1490 Hwy 98 West**
**Mary Esther, FL 32569**

**Pen Air Federal Credit Union**
**1495 E. Nine Mile Road**
**Pensacola, FL 32514**

9

ELECTRONICALLY FILED
12/15/2009 10:04 AM
CV-2009-901466.00
CIRCUIT COURT OF
BALDWIN COUNTY, ALABAMA
JODY WISE CAMPBELL, CLERK

## IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA

| | | |
|---|---|---|
| GARWOOD AND JANET WOLFE, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | **CV-2009-** |
| | ) | |
| LEISURE TYME RV, INC.; | ) | |
| PEN AIR FEDERAL CREDIT UNION; | ) | |
| TERRY J. DRAKE, GAYLE HILL, and | ) | |
| A THROUGH Z, being those persons or | ) | **JURY TRIAL DEMANDED** |
| entities who are responsible for the | ) | |
| wrongful acts and omissions alleged | ) | |
| herein and whose names are | ) | |
| not known to Plaintiffs, but will be | ) | |
| supplied when ascertained, | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

NOW COME Plaintiffs Garwood and Janet Wolfe, and as their Complaint against the above-described Defendants, assert as follows:

### PARTIES

1.  Plaintiffs are natural persons and adult residents of South Dakota.

2.  Defendant Leisure Tyme RV, Inc ("Leisure Tyme"), is a corporation formed outside the State of Alabama, with its principal place of business outside the State of Alabama. At all relevant times, Leisure Tyme did business in the State of Alabama and operated a RV dealership in Baldwin County, Alabama.

3.  Defendant Pen Air Federal Credit Union ("Pen Air") is a credit union formed outside the State of Alabama with its principal place of business in Pensacola, Florida. Pen Air does business in the State of Alabama.

4.  Defendant Terry J. Drake is an adult resident of Baldwin County, Alabama. At all

relevant times, Drake acted as an employee and/or agent of Leisure Tyme.

5.    Defendant Gayle Hill is an adult resident of Florida.  At all relevant times, Hill was

an officer of Leisure Tyme and acted as an employee and/or agent of Leisure Tyme.

6.    Defendants A through Z are these individuals and entities who are liable for the

claims asserted herein, but whose names are not now known to Plaintiffs.

### FACTUAL ALLEGATIONS

7.    Plaintiffs are retirees and spend most of their time traveling in their motor home.  In

December 2008, Plaintiffs decided to trade their 2004 Newnar Mountain Air ("2004 Mountain

Aire") for a newer and larger motor home.  Plaintiffs entered into discussions with Defendant

Leisure Tyme for the purchase of a 2007 Newmar Dutch Star ("2007 Dutch Star"), which was on

Leisure Tyme's lot in Summerdale, Alabama.     The VIN for that motor home is

4VZRT1D9G7C059009.

8.    On or about December 23, 2008, Plaintiffs and Leisure Tyme agreed on terms for

purchase of the new 2007 Dutch Star.  As part of the purchase agreement, the Plaintiffs agreed to

trade in their 2004 Mountain Aire and apply their equity in that coach against the purchase price of

the 2007 Dutch Star.  The VIN for the 2004 Mountain Aire is 5B4MP37G443378450.

9.    The 2004 Mountain Aire was purchased with a loan from Bank of America ("BOA").

As of December 23, 2008, a balance of $102,3334.60 was owed on the BOA loan.  The BOA loan

is secured by a lien on the 2004 Mountain Aire.

10.    During the sale and the negotiations leading up to the sale, Plaintiffs dealt with

Defendants Terry J. Drake and Gayle Hill, both Leisure Tyme sales representatives.  Upon

information and belief, Gayle Hill is a vice-president of Leisure Tyme.

2

11.     During the negotiations leading up to the sale, Plaintiffs were told by Drake and/or other Leisure Tyme representatives that Leisure Tyme did not provide financing directly but that financing would be arranged through Pen Air. Upon information and belief, a very close business relationship exists between Pen Air and Leisure Tyme and Leisure Tyme referred most or all of its customers to Pen Air for financing of coaches sold by Leisure Tyme.

12.     After terms of the sale were established, Leisure Tyme employees presented Plaintiffs with loan papers from Pen Air which the Plaintiffs signed.

13.     As a condition of purchasing the Dutch Star, Defendant Leisure Tyme agreed to pay off the remaining balance of the lien owed to BOA. Leisure Tyme assumed responsibility for taking the steps necessary for removal of the lien on the 2004 Mountain Aire. Plaintiffs filled out paperwork necessary for Leisure Tyme to be able to act on their behalf in connection with paying off the BOA loan. Plaintiffs and Defendants finalized all the paperwork for the purchase of the 2007 Dutch Star and Plaintiffs took delivery of the coach on December 23, 2008.

14.     The purchase price for the 2007 Dutch Star was $237,522.82, including taxes and fees. Plaintiffs were given a credit of $169,570 for the value of the 2004 Mountain Aire and were charged the $102,334.60 necessary to pay off the Bank of America loan. The net purchase price was $169,793.43. Plaintiffs paid a down payment of $30,000, leaving a balance owed of $139,793.42.

15.     Plaintiffs funded the payment of the $139,793.42 net purchase price through the loan with Defendant Pen Air.

16.     Through the paperwork presented to Plaintiffs and the verbal representations of Defendants Drake and Hill, among others, Leisure Tyme represented that the outstanding debt owed to BOA would be retired in full immediately upon closing on the purchase of the 2007 Dutch Star.

Plaintiffs relied on those representations when they decided to purchase the 2007 Dutch Star and expected that they would owe nothing further to BOA. Had Plaintiffs known that the BOA loan would not be retired, they would have not agreed to purchase the 2007 Dutch Star and taken on an additional loan.

17.    When they left the Leisure Tyme dealership on December 23, 2008, Plaintiffs believed that they would not owe another payment to BOA.

18.    At or around the date of the closing, Pen Air tendered to Leisure Tyme the funds needed to pay off the BOA loan. Those funds were tendered by check made payable directly to Leisure Tyme in a manner which did not require an endorsement by BOA. This allowed Leisure Tyme and its employees to use the funds in a manner other than paying off the existing BOA loan. Upon information and belief, the manner in which the funds were tendered to Leisure Tyme was the result of an arrangement between Leisure Tyme and Pen Air. Pen Air knew or should have known tendering funds in this manner created a substantial risk that the existing loans owed by Leisure Tyme's customers, like Plaintiffs, would not be paid off.

19.    Leisure Tyme and its employees failed to apply the funds tendered by Pen Air to fully retire the BOA loan and instead used those funds for its or their own benefit. As a result, Plaintiffs remained indebted to BOA.

20.    The claims made herein against Defendant Leisure Tyme are made solely to determine the value those claims so that Plaintiffs may collect on said claims out of any bond or insurance coverage that may be available to pay them. Nothing stated herein is intended as, nor should be interpreted as, an effort to exceed the authority granted to Plaintiffs by the order of the United States Bankruptcy Court for the Northern District of Florida dated July 13, 2009 and issued

in the case styled In Re Leisure Tyme RV, Inc., Case No. 09-30419-LMK.

## COUNT I
## (BREACH OF CONTRACT)

21.    The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

22.    Leisure Tyme has breached the purchase agreement with Plaintiffs by failing to retire the BOA loan as promised.

23.    Plaintiffs have suffered damage as a proximate result of Defendant's breach.

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendant Leisure Tyme for beach of contract and award them compensatory damages, including damages for mental anguish and emotional distress; plus interest and costs. Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

## COUNT II
## (FRAUD)

24.    The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

25.    Defendants Drake and Hill, acting as agents and/or employees of Leisure Tyme, represented to Plaintiffs that, upon closing of the purchase of the 2007 Dutch Star, the outstanding BOA loan would be retired in full.  This representation was also made by Leisure Tyme in the sales documents it prepared and delivered to Plaintiffs on the day of the closing.

26.    The representations were relied upon directly by Plaintiffs to their detriment.  Those statements were made with the intent to induce Plaintiffs into signing the purchase contract for the 2007 Dutch Star.

5

27.     The representations made by Defendants were false when made and said Defendants knew them to be false when they were made.  The misrepresentations were made willfully to deceive, or recklessly without knowledge or were made innocently by mistake but were, in any case, relied upon by the Plaintiffs to their detriment.

28.     Plaintiffs have suffered damage as a proximate result of Defendants' fraud.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendants Drake, Hill and Leisure Tyme for fraud and award Plaintiffs compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs.  Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

## COUNT III
### (WANTONNESS)

29.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

30.     The acts and omissions made by Defendants Drake, Hill and Leisure Tyme in failing to pay the funds received through the purchase of the 2007 Dutch Star to retire the BOA loan all constitute wantonness and were made with a wanton, reckless or conscious disregard for the Plaintiffs' rights and welfare.

31.     The acts and omissions made by Defendant Pen Air in tendering to Leisure Tyme the funds needed to pay off the BOA loan constitute wantonness and were made with a wanton, reckless or conscious disregard for the Plaintiffs' rights and welfare.

32.     Defendants Leisure Tyme and Pen Air have also wantonly hired, trained and supervised their employees.

33.     Plaintiffs have suffered damage as a proximate result of the Defendants' wantonness.

6

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendants Leisure Tyme, Drake, Hill and Pen Air for wantonness and award Plaintiffs compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs. Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

<div align="center">

**COUNT IV**
**(NEGLIGENCE)**

</div>

34.    The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

35.    The acts and omissions made by Defendants Drake, Hill and Leisure Tyme in failing to pay the funds received through the purchase of the 2007 Dutch Star to retire the BOA loan all constitute negligence.

36.    The acts and omissions made by Defendant Pen Air in tendering to Leisure Tyme the funds needed to pay off the BOA loan constitute negligence.

37.    Defendants Leisure Tyme and Pen Air have also negligently hired, trained and supervised their employees.

38.    Plaintiffs have suffered damage as a proximate result of the Defendants' negligence.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendants Leisure Tyme, Drake, Hill and Pen Air for negligence and award them compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

**TRIAL BY JURY IS HEREBY REQUESTED AS TO ALL CLAIMS ASSERTED**

/s/ Earl P. Underwood, Jr.
Earl P. Underwood (UND008)
Attorney for Plaintiffs
21 South Section Street
Fairhope, AL 36532
251-990-5558
epunderwood@alalaw.com


/s/ Kenneth J. Riemer
KENNETH J. RIEMER (RIE003)
Attorney for Plaintiffs
P. O. Box 1206
Mobile, AL 36633
Telephone: 251-432-9212
Fax: 251-433-7172
kjr@alaconsumerlaw.com


**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:**

Leisure Tyme RV Center, Inc. C/O
Gayle Hill
9017 Navarre Parkway
Navarre, FL 32566

Pen Air Federal Credit Union
John H Ochs
1495 East Nine Mile Road
Pensacola, FL  32514

Terry J. Drake
1925A Vaughn Road
Seminole, AL 36574

Gayle Hill
9017 Navarre Parkway
Navarre, FL 32566

8

ELECTRONICALLY FILED
3/24/2010 12:01 PM
CV-2010-900511.00
CIRCUIT COURT OF
BALDWIN COUNTY, ALABAMA
JODY WISE CAMPBELL, CLERK

## IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA

| | | |
|---|---|---|
| JAMES MCNALLY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | CV-2010- |
| | ) | |
| LEISURE TYME RV, INC.; | ) | |
| ARMY AVIATION FEDERAL CREDIT | ) | |
| UNION;  and A THROUGH Z, being | ) | |
| those persons or entities who are | ) | |
| responsible for the wrongful acts and | ) | **JURY TRIAL DEMANDED** |
| omissions alleged herein and whose | ) | |
| names are not known to Plaintiff, | ) | |
| but will be supplied when ascertained, | ) | |
| | ) | |
| **Defendants.** | ) | |

### COMPLAINT

NOW COMES Plaintiff, James McNally, and as his Complaint against the above-described Defendants, assert as follows:

### PARTIES

1.     Plaintiff is a natural person and an adult resident of Okaloosa County, Florida.

2.     Defendant, Leisure Tyme RV, Inc., ("Leisure Tyme"), is a corporation formed outside the State of Alabama, with its principal place of business in Mary Esther, Florida.  At all relevant times, Leisure Tyme did business in the State of Alabama and operated a RV dealership in Baldwin County, Alabama.

3.     Defendant, Army Aviation Federal Credit Union ("Army Credit Union") is a credit union formed outside the State of Alabama with its principal place of business in Pensacola, Florida. Army Credit Union does business in Baldwin County, Alabama.

1

4.      Defendants, A through Z are these individuals and entities who are liable for the claims asserted herein, but whose names are not now known to Plaintiff.

## FACTUAL ALLEGATIONS

5.      Plaintiff is retired and spends most of his time traveling in his motor home. In January 2009, Plaintiff decided to trade his 2004 Newmar Mountain Aire ("2004 Newmar") for a newer motor home. Plaintiff entered into discussions with Defendant, Leisure Tyme for the purchase of a 2006 Newmar Dutch Star ("2006 Dutch Star"), which was on Leisure Tyme's lot in Summerdale, Alabama.   The VIN for that motor home is 4VZBR1D9X6C054361.

6.      On or about January 9, 2009 Plaintiff and Leisure Tyme agreed on terms for purchase of the 2006 Dutch Star.  As part of the purchase agreement, the Plaintiff agreed to trade in his 2004 Newmar and a 2003 Ford F-350 VIN#1FTWW32P13EB37797 and applied the equity against the purchase price of the 2006 Dutch Star.

7.      The 2004 Newmar had been purchased with a loan from Bank of America.  As of January 9, 2009, a pay-off balance of $55,113.62 was owed on the Bank of America loan. The Bank of America loan is secured by a lien on the 2004 Newmar.

8.      During the sale and the negotiations leading up to the purchase, Plaintiff dealt with Defendant, Gayle Hill, who was the owner of Leisure Tyme. Plaintiff also dealt with other employees and representatives of Leisure Tyme whose names are not yet known.

9.      Defendant, Leisure Tyme agreed, as a condition of purchasing the 2006 Dutch Star, to pay off the remaining balance of the lien owed to Bank of America on the 2004 Newmar. Leisure Tyme assumed responsibility for taking the steps necessary for removal of that lien and satisfaction of the Bank of America loan. Plaintiff filled out paperwork necessary for Leisure Tyme to be able to

2

act on Plaintiff's behalf in connection with paying off the Bank of America loan. On or about January 9, 2009, Plaintiff and Defendant finalized all the paperwork related to the purchase of the 2006 Dutch Star and trade-in of the 2004 Newmar and F-350. Plaintiff took delivery of the 2006 Dutch Star thereafter.

10.     The purchase price for the 2006 Dutch Star was $200,394.00, including taxes and fees. Plaintiff was given a credit of $92,900.00 for the value of the 2004 Newmar and F-350 and was charged the $55,113.62 necessary to pay off the Bank of America loan. The resulting net purchase price was $162,624.14.

11.     During the discussions leading up to the purchase of the 2006 Dutch Star, Gayle Hill directed Plaintiff to Army Credit Union for financing. Accordingly, arrangements were made through Leisure Tyme to have the purchase price financed through a loan from Army Credit Union. Plaintiff was presented with loan papers from Army Credit Union which Plaintiff signed.  On January 9, 2009, on information and belief, Army Credit Union issued a check made payable to Leisure Tyme in the amount of the net purchase price of $162,624.12.

12.     Upon information and belief, a very close business relationship existed between Army Credit Union and Leisure Tyme and Leisure Tyme referred many of its customers to Army Credit Union for financing of RV's sold by Leisure Tyme.

13.     The check tendered by Army Credit Union directly to Leisure Tyme included the funds which were to be used to pay off the Bank of America loan.  By tendering the funds directly to Leisure Tyme, Army Credit Union allowed the check to be negotiated without any endorsement by Bank of America or the Plaintiff. This allowed Leisure Tyme and its employees to use the funds in a manner other than paying off the Bank of America loan. Upon information and belief, this was the

3

result of an arrangement between Leisure Tyme and Army Credit Union. Army Credit Union knew or should have known tendering funds in this manner created a substantial risk that the existing loans owed by Leisure Tyme's customers, like Plaintiff, would not be paid off.

14.     Leisure Tyme has failed to pay off the Bank of America loan and diverted the funds intended for that purpose for its own use or the use of its employees or agents. As a result, Plaintiff continued to be indebted to Bank of America for the unpaid balance of the 2004 Newmar loan.

15.     Through the paperwork presented to Plaintiff and the verbal representations of Defendants Gayle Hill, among others, Leisure Tyme represented that the outstanding debt owed to Bank of America would be retired in full immediately upon closing on the purchase of the 2006 Dutch Star. Plaintiff relied on those representations when he decided to purchase the 2006 Dutch Star and expected that he would owe nothing further to Bank of America. Had Plaintiff known that the Bank of America loan would not be retired, he would have not agreed to purchase the 2006 Dutch Star and taken on an additional loan.

16.     When he left the Leisure Tyme dealership on January 9, 2009, Plaintiff believed that he would not owe another payment to Bank of America.

17.     Prior to the purchase of the 2006 Dutch Star, Plaintiff had made all of his payments on the Bank of America loan on time. Shortly after the purchase of the 2006 Dutch Star, Plaintiff received notice from Bank of America that the following month's payment was overdue. Plaintiff immediately contacted Leisure Tyme but discovered that the phone number was disconnected.

18.     Plaintiff made his monthly payments on the 2006 Dutch Start for February and March, 2009. He was contacted by Bank of America in April 2009 that the loan had not been paid off. Plaintiff again attempted to contact Leisure Tyme but soon discovered they had gone out of

4

business.

19.     Plaintiff received notice from Bank of America in August 2009 that the 2004 Newmar had been sold at auction and that Plaintiff owed a deficiency balance in excess of $30,000.00 to Bank of America.

20.     Leisure Tyme and/or Army Credit Union have failed to pay off the Bank of America loan in full as required and as represented.  Over $30,000 remains unpaid and a delinquent debt obligation to Bank of America remains on the Plaintiff's credit file.  This has caused significant damages to the Plaintiff credit rating.

21.     At all relevant times, Gayle Hill and John Watters acted as employees and/or agents of Leisure Tyme.

22.     The claims made herein against Defendant Leisure Tyme are made solely to determine the value of those claims so that Plaintiff may collect on said claims out of any bond or insurance coverage that may be available to pay them. Nothing stated herein is intended as, nor should be interpreted as, an effort to exceed the authority granted to Plaintiff by the order of the United States Bankruptcy Court for the Northern District of Florida dated July 13, 2009 and issued in the case styled In Re Leisure Tyme RV, Inc., Case No. 09-30419-LMK.

## COUNT I
### (BREACH OF CONTRACT)

23.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

24.     Leisure Tyme has breached the purchase agreement with Plaintiff by failing to retire the AAFCU loan as promised.

5

25.    Plaintiff has suffered damage as a proximate result of Defendant's breach.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant, Leisure Tyme for beach of contract and award him compensatory damages, including damages for mental anguish and emotional distress; plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT II
### (FRAUD)

26.    The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

27.    Gayle Hill, and other individuals acting as agents and/or employees of Leisure Tyme, represented to Plaintiff that, upon closing of the purchase of the 2006 Dutch Star, the outstanding Bank of America loan would be retired in full. This representation was also made by Leisure Tyme in the sales documents it prepared and delivered to Plaintiff on the day of the closing.

28.    The representations were relied upon directly by Plaintiff to his detriment. Those statements were made with the intent to induce Plaintiff into signing the purchase contract for the 2006 Dutch Star.

29.    The representations made by Defendants were false when made and said Defendants knew them to be false when they were made. The misrepresentations were made willfully to deceive, or recklessly without knowledge or were made innocently by mistake but were, in any case, relied upon by the Plaintiff to his detriment.

30.    Plaintiff has suffered damage as a proximate result of Defendants fraud.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendant Leisure

6

Tyme for fraud and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT III
## (WANTONNESS)

31.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

32.     The acts and omissions made by Defendants Leisure Tyme and Army Credit Union in failing to pay the funds received through the purchase of the 2006 Dutch Star to retire the Bank of America loan all constitute wantonness and were made with a wanton, reckless or conscious disregard for the Plaintiff's rights and welfare.

33.     The acts and omissions made by Defendant, Army Credit Union in tendering to Leisure Tyme the funds needed to pay off the Bank of America loan constitute wantonness and were made with a wanton, reckless or conscious disregard for the Plaintiff's rights and welfare.

34.     Defendants, Leisure Tyme and Army Credit Union have also wantonly hired, trained and supervised their employees.

35.     Plaintiff has suffered damage as a proximate result of the Defendants' wantonness.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants, Leisure Tyme and Army Credit Union for wantonness and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT IV
## (NEGLIGENCE)

36.     The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

37.     The acts and omissions made by Defendants, Leisure Tyme and Army Credit Union in failing to pay the funds received through the purchase of the 2006 Dutch Star to retire the Bank of America loan all constitute negligence.

38.     The acts and omissions made by Defendant, Army Credit Union in tendering to Leisure Tyme the funds needed to pay off the Bank of America loan constitute negligence.

39.     Defendants Leisure Tyme and Army Credit Union have also negligently hired, trained and supervised their employees.

40.     Plaintiff has suffered damage as a proximate result of the Defendants' negligence.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants, Leisure Tyme and Army Credit Union for negligence and award them compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.


**RESPECTFULLY SUBMITTED;**

**DATED this day 24th of March, 2010.**


**TRIAL BY JURY IS HEREBY REQUESTED AS TO ALL CLAIMS ASSERTED**

8

s/ James D. Patterson
James D. Patterson (PAT068)
Kenneth J. Riemer (RIE003)
Earl P. Underwood, Jr. (UND008)
Attorneys for Plaintiff
166 Government Street, Suite 100
Mobile, Alabama 36602
251.432.9212 (telephone)
251.433.7172 (fax)
jpatterson@alalaw.com

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:**

Leisure Tyme RV Center, Inc.
c/o Gayle Hill
9017 Navarre Parkway
Navarre, FL 32566

AAFCU Federal Credit Union
341 North Daleville Ave.
Daleville, AL 36322

9