IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **NEW HAMPSHIRE INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 11-414-CG-B** |
| | ) | |
| **GAYLE HILL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 21). Upon consideration of the parties' briefs and evidentiary submissions (Docs. 21, 21-1 to 21-3, 29, 30-1 to 30-10, 32, 37, 37-1, 41, 41-1 and 44), Plaintiff's motion is due to be **GRANTED**.

## I.      FACTUAL BACKGROUND

Plaintiff New Hampshire Insurance Company ("NHIC"), a New Hampshire corporation, brings this declaratory judgment action to determine its rights and obligations under a commercial crime, garage and property policy issued to its former policyholder, Leisure Tyme RV, Inc. ("Leisure Tyme"), regarding claims asserted in a handful of lawsuits[1] arising from Leisure Tyme's alleged failure to

---

[1]    <u>Wachovia Dealer Serv., Inc. v. Nat'l City Bank et al.</u>, No. 2009-CA-007327-S (Fla. Cir. Ct., Okaloosa Cnty.); <u>Garwood v. Leisure Tyme RV Ctr. et al.</u>, No. CV-2009-901466.00 (Ala. Cir. Ct., Baldwin Cnty.); <u>McNally v. Leisure Tyme RV Ctr. et al.</u>, No. CV-2010-900511.00 (Ala. Cir. Ct., Baldwin Cnty.); and <u>Cammauf v. Leisure Tyme RV Ctr. et al.</u> CV-2010-900510.00 (Ala. Cir. Ct., Baldwin Cnty.) (collectively, the "Underlying Litigations").

retire loans extended to Defendants John A. Pankratz, Garwood C. and Janet R. Wolfe, Rodney I. Cammauf, and James H. McNally (collectively, the "Purchaser Defendants").[2]  The facts are largely not in dispute.

The Purchaser Defendants were owners of recreational vehicles ("RVs"), who, between June 2008 and January 2009, contracted with Leisure Tyme to trade in their used RVs toward the purchase price of new RVs.  (Doc. 1 at 3.)  As a condition of each Purchaser Defendant's purchase of a new RV, Leisure Tyme agreed to pay the remaining loan balance the Purchaser Defendant owed on the trade-in.  (Id. at 4.)  The Purchaser Defendants allege that they executed the paperwork necessary for Leisure Tyme to satisfy the remaining loan balances owed on their trade-ins (id.), but that Leisure Tyme deposited into its own operating account the funds intended to pay off the loans and used those funds for operating expenses.  (See Doc. 1 at 4; Doc. 29 at 6.)  At the time they commenced the Underlying Litigations, each of the Purchaser Defendants owed a balance on his or her new RV ranging from $30,000 to $290,000.[3]  (Doc. 29 at 6.)  Leisure Tyme ultimately filed for bankruptcy on March 13, 2009.  (Doc. 1 at 4.)  Four months later, the United States Bankruptcy Court for the Northern District of Florida modified the automatic bankruptcy stay to allow the Purchaser Defendants to collect on their claims to the extent any bond

---

[2]   Former defendants Brian Hannon, Terry Drake, Eva N. and Charles Cortese, Donald R. and Jane M. McBrier, and James L. Heitman were dismissed from this action. Docs. 14, 27, and 34.

[3]   John Pankratz owed an estimated $290,000 on his trade-in (Doc. 30-3 at 4); Garwood and Janet Wolfe were in debt for approximately $102,000 (Doc. 30-4 at 5); Rodney Cammauf owed approximately $82,000 (Doc. 30-6 at 3); and James McNally was in debt for over $30,000. (Doc. 30-5 at 7.)

or insurance coverage was available.  (Id.)  The Purchaser Defendants sued Leisure

Tyme[4] (id. at 4; Doc. 29 at 2), and their claims were compelled to arbitration in

Mobile County, Alabama.[5]  (Doc. 1 at 4.)  NHIC has, up until this point, defended

Leisure Tyme and Gayle Hill pursuant to a reservation of rights.  (Doc. 21 at 5; Doc.

29 at 2.)

The Policy

NHIC issued insurance policy number 01-LX-009349860-0/000 (the "Policy")

to Leisure Tyme for the period from June 1, 2008 through June 1, 2009.  (Doc. 21-1

at 5.)  The policy was issued and delivered to Leisure Tyme in Mary Esther, Florida,

where Leisure Tyme maintains its principal place of business.  (Id. at 2, ¶3).  NHIC

and the Purchaser Defendants dispute whether the Policy covers Leisure Tyme and

Leisure Tyme's president, Defendant Gayle Hill, for the claims and damages alleged

by the Purchaser Defendants in the Underlying Litigations.  (Doc. 1 at 10, ¶25; Doc.

9 at 2, ¶25; Doc. 42 at 3, ¶25.)

The Policy provides that NHIC "will pay all sums an 'insured' legally must

pay as damages because of 'bodily injury' or 'property damage' to which this

insurance applies caused by an 'accident' and resulting from 'garage operations'

---

[4]   Purchaser Defendants Pankratz and Garwood and Janet Wolfe also named Leisure Tyme's
president, Gayle Hill, as a defendant.

[5]   At this time, only James McNally's claims have been resolved through arbitration.  After a
hearing held on June 11 and 12, 2012, the arbiter dismissed McNally's claim of misrepresentation.
(Doc. 41-1 at 2.)  The arbiter found that McNally had proved his claims of negligence and breach of
contract and awarded a total award of $82,717.60 to McNally.  (Id. at 3.)  The arbiter dismissed the
remaining claims with prejudice.  (Id.)

other than the ownership, maintenance or use of covered 'autos.'" (Doc. 21-2 at 44.)
For the Policy to apply, the "accident" must occur in the coverage territory defined
by the Policy,[6] and the "bodily injury" or "property damage" must occur during the
policy period. (Id.) The relevant definitions from the Policy are below:

### SECTION VI—DEFINITIONS

A.   "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage."

B.   "Auto" means a land motor vehicle, "trailer" or semitrailer.

C.   "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these . . . .

H.   "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in Section 1 of this Coverage Form as covered "autos." Garage Operations" also include all operations necessary of incidental to a garage business . . . .

L.   "Loss" means direct and accidental loss or damage. But for Garagekeepers Coverage only, "loss" also includes any resulting loss of use . . . .

O.   "Property damage" means damage to or loss of use of tangible property.

Doc. 21-2 at 57-59.

---

[6]   The coverage territory includes, but is not limited to, the United States of America, the territories and possessions of the United States of America, Puerto Rico, and Canada. (Doc. 21-2 at 56).

The Policy also sets forth a range of conduct that, if engaged in by the insured, precludes recovery.  According to Section II.B's exclusionary provisions of the Policy:

> This insurance does not apply to any of the following:
>
> 1.  "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured."
>
> 2.  Liability assumed under any contract or agreement.
>
> 6.  "Property damage" to . . . Property in the "insured's" care, custody or control
>
> 14.  Loss of use of other property not physically damaged if caused by . . . [a] delay or failure by [Leisure Tyme] or anyone acting on Leisure Tyme's behalf to perform a contract or agreement in accordance with its terms.

Id. at 46, 47, 49.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  The district court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'"  Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249).  "If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>See id.</u> at 251-52. The moving party bears the burden of proving that no genuine issue of material fact exists. <u>O'Ferrell v. United States</u>, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. <u>Burton v. City of Belle Glade</u>, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds might differ on the inferences arising from undisputed facts, then [a court] should deny summary judgment." <u>Hinesville Bank v. Pony Exp. Courier Corp.</u>, 868 F.2d 1532, 1535 (11th Cir. 1989) (citing <u>Mercantile Bank & Trust Co. v. Fid. & Deposit Co.</u>, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(a), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." <u>Howard v. BP Oil Co.</u>, 32 F.3d 520, 524 (11th Cir. 1994) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608

6

(11th Cir. 1991).  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."  Vega v. Invsco Group, Ltd., 432 F. App'x. 867, 870 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(e)(2)).  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole."  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

### III.   DISCUSSION

NHIC asserts that summary judgment should be granted in its favor because (1) the Purchaser Defendants have not alleged violations of Truth in Lending Act, a federal or state consumer credit act, or other similar statute, law or ordinance as required by the Policy's Garage Policy Extension Endorsement; (2) the damages alleged by the Purchaser Defendants do not constitute "bodily injury" or "property damage" arising out of an "accident" as those terms are contemplated in the Garage Coverage Form section of the Policy; and (3) the Policy's Contractual Liability Exclusion, Care Custody or Control Exclusion, Loss of Use Exclusion, and Expected

7

or Intended Injury Exclusion preclude coverage under the Garage Coverage Form.
The Court will address each argument.

### A. Governing Law

Pursuant to Alabama conflict of laws principles, this Court will apply Florida law to determine the scope of coverage under the Policy and NHIC's duty to defend Leisure Tyme and Gayle Hill for the claims brought by the Purchaser Defendants. "A federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." O'Neal v. Kennamer, 958 F.2d 1044, 1046 (11th Cir. 1992) (citing Goodwin v. George Fischer Foundry Sys., Inc., 769 F.2d 708, 711 (11th Cir. 1985)).  Adhering to the principle of *lex loci contractus*, Alabama courts hold that contract claims are governed by the laws of the state in which the contract was made, unless the contracting parties chose a particular state's laws to govern their agreement.  Cherry, Bekaert & Holland v. Brown, 582 So. 2d 502, 506 (Ala. 1991).  Insurance policies are "essentially like all other contracts," Hartford Fire Ins. Co. v. Shapiro, 117 So. 2d 348, 352 (Ala. 1960), and are therefore subject to the *lex loci contractus* doctrine.
Because this dispute involves an interpretation of an insurance policy issued in the State of Florida, Florida law must govern.[7]

---

[7]    Though Purchaser Defendants do not dispute that Florida substantive law controls the interpretation of the policy, they argue that, under the principle of *lex loci delicti*, "Alabama tort law will determine the substantive issues, including what remedies are available."  (Doc. 29 at 13). Whereas the matter currently before the Court is a contract dispute, Florida law shall control the interpretation of the Policy and the terms therein.  See Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So. 2d 467, 470 (Fla. 1993) ("Florida law has long followed the general rule that tort law principles do not control judicial construction of insurance contracts.").

**B. Duty To Defend and Duty To Indemnify**

"Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). The duty to defend is determined by the allegations in the complaint. Jones v. Fla. Ins. Guar. Ass'n, 908 So. 2d 435, 443 (Fla. 2005). "[A]n insurer's duty to defend its insured against a legal action arises when the complaint [in the underlying case] alleges facts that fairly and potentially bring the suit within policy coverage." Id. at 442-43. "[T]he duty to indemnify is narrower than the duty to defend and thus cannot exist if there is no duty to defend." WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co., 16 So. 3d 904, 906 (Fla. Dist. Ct. App. 2009). "[U]nder Florida law an insurer's duty to indemnify is determined by analyzing the policy coverages in light of the actual facts of the underlying case." Am. Home Assurance Co. v. Vreeland, 2006 WL 1037111, at *1 (M.D. Fla. Apr. 19, 2006). Therefore, the Court must look to the allegations in the Underlying Litigations as compared with the coverage afforded under Leisure Tyme's insurance policy to determine whether NHIC has any duty to defend or indemnify Leisure Tyme. See Gen. Fid. Ins. Co. v. Foster, 808 F. Supp. 2d 1315, 1319 (S.D. Fla. 2011).

**C. Coverage Under the Policy**

**1. Garage Policy Extension Endorsement**

In an apparent effort to anticipate the Purchaser Defendants' arguments, NHIC first asserts that it owes no coverage to Leisure Tyme under the Garage

Policy Extension Endorsement (the "GPEE"), which affords coverage for "the unintentional violation of any Federal or State Consumer Credit Act including but not limited to the Truth in Lending Act, or other similar statute, law or ordinance . . . ." (Doc. 21-2 at 90.)  However, in responding to NHIC's motion for summary judgment, the Purchaser Defendants rely exclusively on Garage Coverage Form for coverage, (Doc. 29 at 8-18), and therein is where the dispute lies.[8]  Accordingly, the Court's analysis will concentrate whether NHIC has a duty to defend and indemnify Leisure Tyme under the Garage Coverage Form portion of the Policy.

        2.  <u>Garage Coverage Form</u>

           a.  *"Accident"*

The Policy covers "damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' . . . ." (Doc. 21-2 at 44.) Confusingly, though the Policy defines "accident," both parties argue that the term is undefined and that a resort to a judicially constructed definition is necessary. (<u>See</u> Doc. 21 at 16; Doc. 21-3 at 21; Doc. 29 at 5, 9.)  Because the parties ignore that "accident" is a defined term, neither NHIC nor Purchaser Defendants offers any arguments as to how the Policy's definition is to be interpreted.  The meaning of the Policy's definition – "'accident' includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage'" (Doc. 21-2 at 57) – is far

---

[8]   Because coverage under the GPEE is not at issue, the Court need not address NHIC's argument that Mr. Cammauf's deceptive trade practices claim alleges an unintentional violation of a consumer credit statute.

from self-evident, and briefing would have been useful.  However, the Court need

not dwell on this shortcoming because, as explained below, summary judgment is

due to be granted to Plaintiff notwithstanding the meaning of "accident" because 1)

the record establishes that the Purchaser Defendants have not suffered any bodily

injury as defined by the Policy and as understood under Florida law and 2) any

property damage suffered by the Purchaser Defendants is expressly excluded from

coverage.

> b.   *"Bodily Injury"*

The Policy defines "bodily injury" as "bodily injury, sickness or disease

sustained by a person including death resulting from any of these."  (Doc. 21-2 at

57).  NHIC claims that Purchaser Defendants' claims of mental anguish do not

constitute "bodily injury" because Florida's "impact rule" applies.  (Doc. 21 at 12-13).

The impact rule requires that a plaintiff suffer a physical impact before recovering

for emotional distress caused by the negligence of another.  See R.J. v. Humana of

Fla., Inc., 652 So. 2d 360, 362 (Fla. 1995).  The rule operates as "a means for

'assuring the validity of claims for emotional or psychic damages.'"  Hagan v. Coca-

Cola Bottling Co., 804 So. 2d 1234, 1236 (Fla. 2001) (quoting R.J., 652 So. 2d at

363).  "Florida's version of the impact rule has more aptly been described as having

a 'hybrid' nature, requiring either impact upon one's person or, in certain situations,

at a minimum the manifestation of emotional distress in the form of a discernible

physical injury or illness."  Gracey v. Eaker, 837 So. 2d 348, 355 (Fla. 2002) (citing

Kush v. Lloyd, 616 So. 2d 415, 422 (Fla. 1992)).

11

If the plaintiff has not suffered an impact, there are two possible methods to recovery.  One is that the complained-of mental anguish be "manifested by physical injury," the plaintiff must be "involved" in the incident by seeing, hearing, or arriving on the scene as the traumatizing event occurs, and the plaintiff must suffer the complained-of mental distress and accompanying physical impairment "within a short time" of the incident.  Willis v. Gami Golden Glades, LLC, 967 So. 2d 846, 850 (Fla. 2007).  The second applies "in a certain very narrow class of cases in which the foreseeability and gravity of the emotional injury involved, and lack of countervailing policy concerns, have surmounted the policy rationale undergirding the application of the impact rule."[9]  Fla. Dep't of Corr. v. Abril, 969 So. 2d 201, 206 (Fla. 2007) (quoting Rowell, 850 So. 2d at 478).

Purchaser Defendants argue that their claims against Leisure Tyme satisfy the impact rule because they suffered physical injuries – namely, significant pecuniary losses, damage to their credit-worthiness, and other financial consequences.  (Doc. 29 at 12.)  However, these injuries do not constitute a physical injury to their person.  See Eagle-Picher Indus., Inc. v. Cox, 481 So. 2d 517 (Fla. Dist. Ct. App. 1985) ("The essence of impact . . . is that the outside force or substance . . . touch or enter into the plaintiff's body.").  Here, the injury or impact

---

[9]   For instance, Florida's impact rule does not apply to recognized intentional torts that result in predominantly emotional damages, such as defamation, invasion of privacy and intentional infliction of emotional distress, Rowell v. Holt, 850 So. 2d 474, 478 n. 1 (Fla. 2003), nor does it apply to "freestanding torts" that exist regardless of whether emotional damages may accompany these torts – such as wrongful birth, Kush, 616 So. 2d at 422.

is to the Purchaser Defendants' bank accounts and credit scores – not to the Purchaser Defendants themselves.

Purchaser Defendants argue alternatively that the impact rule does not apply because their mental anguish is accompanied by manifestations of physical symptoms.  (Doc. 29 at 12.)  However, there is no evidence that Purchaser Defendants meet the three-part test in <u>Willis</u>, which requires not only physical manifestations of symptoms, but also involvement in the incident "by seeing, hearing, or arriving on the scene as the traumatizing event occurs," and manifestation of physical symptoms "within a short time" of the incident.  <u>Willis</u>, 967 So. 2d at 850.  Furthermore, Purchaser Defendants have offered no policy arguments that would lead this Court to circumvent application of the impact rule, and this Court finds that no special exception is justified under the circumstances of this case.

Moreover, Purchaser Defendants generally fail to provide any evidence as to when their physical symptoms developed and to connect their symptoms to the alleged accident.  Under the terms of the Policy, NHIC does not have a duty to indemnify Leisure Tyme unless there was a bodily injury which occurred between June 1, 2008 and March 13, 2009, the date the Policy was cancelled.  (Doc. 21-2 at 44; Doc. 21-1 at 2)  "Florida courts follow the general rule that the time of occurrence within the meaning of an indemnity policy is the time at which the plaintiff's injury first manifests."  <u>See</u> <u>Am. Motorists Ins. Co. v. S. Sec. Life Co.</u>, 80 F. Supp. 2d 1280, 1284 (M.D. Ala. 2000) (citing <u>Travelers Ins. Co., v. C.J. Gayfer's &</u>

Co., 366 So. 2d 1199, 1202 (Fla. Dist. Ct. App. 1979)).  Purchaser Defendants submit no medical records or affidavits, but rely exclusively on deposition testimony, the majority of which fails to indicate dates when symptoms first developed.  Based on the factual record before it, the Court cannot reasonably infer that the Purchaser Defendants' physical symptoms manifested between June 1, 2008 and March 13, 2009.  Indeed, the evidence that Purchaser Defendants have offered demonstrates that some of their symptoms developed either before or after the Policy period.  For instance, Janet Wolfe's heart pains and trip to the emergency room manifested in November 2009 – eight months after the Policy was cancelled.  (Doc. 30-9 at 15-16, 18.)  Additionally, James McNally testified that he had been seeking medical treatment for post-traumatic stress symptoms he suffered from serving in Vietnam before the issues with Leisure Tyme arose, (Doc. 32 at 78-80), and the Court cannot simply speculate that his complaints of stress, sleep deprivation, and a short temper were caused by Leisure Tyme and not by his preexisting post-traumatic condition.

For all these reasons, the Purchaser Defendants have not made a significant showing as to a genuine dispute of whether they suffered a "bodily injury" under Florida law.

c.    *"Property Damage"*

The Purchaser Defendants contend that NHIC has a duty to defend under the Policy's "property damage" provision because each complaint requests compensatory damages, "which would include the loss of use of the trade-in RVs." (Doc. 29 at 14.)  Plaintiff disputes that the underlying complaints, when fairly read,

allege claims for the loss of use of their old RVs.  (Doc. 37 at 11.)  Though the language of the complaint need not specifically include the phrase "loss of use," see McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 758 So. 2d 692, 695 (Fla. Dist. Ct. App.  2000), it must allege facts that demonstrate potential coverage under the policy.  Jones, 908 So. 2d at 443.  In any event, even assuming that the Purchaser Defendants' complaints in the Underlying Litigations assert claims for the loss of use of the RVs and that such loss of use constitutes "property damage,"[10] the Policy contains two exclusions that apply to deny coverage.

First, Exclusion 6 precludes coverage for "'[p]roperty damage' to . . . [p]roperty in the 'insured's' care, custody, or control."  (Doc. 21-2 at 47).  "Florida holds that where the insured has possessory control of the property, the exclusion applies."  Essex Ins. v. Rodgers Bros. Servs., Inc., 2007 WL 2298356, at *8 (M.D. Fla. Aug. 7, 2007) (internal punctuation omitted).  It is undisputed that the Purchaser Defendants' loss of use occurred after they traded in their RVs and that the property was in Leisure Tyme's possessory control.  (Doc. 30-7 at 37-38; Doc. 30-8 at 44-45, Doc. 30-10 at 38-39; Doc. 32 at 16).  Additionally, under the Policy's Loss

---

[10]   The Court is mindful that "[a]ny doubts as to whether there is a duty to defend in a particular case must be resolved against the insurer and in favor of the insured."  Category 5 Mgmt. Group, LLC v. Companion Prop. & Cas. Ins. Co., 76 So. 3d 20, 23 (Fla. Dist. Ct. App. 2011).  While none of the complaints in the Underlying Litigations allege specifically "loss of use," James McNally and Rodney Cammauf arguably assert facts, which, when fairly read, assert the loss of tangible property.  McNally pleads that he "received notice from Bank of America in 2009 that the 2004 Newmar had been sold at auction . . ." (Doc. 30-5 at 7), and Cammauf pleads that "[o]n July 7, 2009, [he] received notice from GEMB Lending stating the 2001 Fleetwood would be sold at auction.  On information and belief, the RV was sold . . . ."  Both Mr. Pankratz's and the Wolfes' complaint state that they traded in their used RVs to Leisure Tyme (Doc. 30-3 at 5; Doc. 30-4 at 4-6), and that Leisure Tyme failed to retire their loans prior to closing and filing for bankruptcy (Doc. 30-3 at 5-7; Doc. 30-4 at 5-6).  When fairly read, these allegations arguably make out loss of use.

of Use exclusion, there is no coverage for the "[l]oss of use of other property not physically damaged if caused by . . . a delay or failure by [Leisure Tyme] or anyone acting on [Leisure Tyme's] behalf to perform a contract or agreement in accordance with its terms." (Doc. 21-2 at 49). It is unreasonable to suggest that this exclusion does not apply when Purchaser Defendants' claims stem from the failure of Leisure Tyme to perform contractual obligations to satisfy the liens on the traded-in RVs. The Purchaser Defendants do not even attempt an argument to the contrary. Because these two provisions each work to exclude coverage, the Court need not reach whether the Policy's Contractual Liability Exclusion also applies.

## CONCLUSION

NHIC does not have a duty to defend or indemnify Leisure Tyme or Gayle Hill in the Underlying Litigations because the Purchaser Defendants have suffered neither a "bodily injury" nor non-excluded "property damage" within the meaning of the Policy. For the reasons stated above, the motion of Plaintiff for summary judgment (Doc. 21) is **GRANTED.**

**DONE and ORDERED** this 23rd day of August, 2012.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE